**Shibeshi LEMA, Petitioner,**

v.

**UNITED STATES IMMIGRATION and NATURALIZATION SERVICE, et al., Respondents.**

**No. C02–0627L.**

United States District Court, W.D. Washington.

Aug. 8, 2002.

Thomas W. Hillier, II, Jay Warren Stansell, Michelle Marie Sweet, Federal Public Defender's Office, Seattle, WA, for Shibeshi Lema.

Christopher Lee Pickrell, U.S. Attorney's Office, Seattle, WA, for respondents.

ORDER REGARDING MAGISTRATE JUDGE'S JUNE 7, 2002 REPORT AND RECOMMENDATION

LASNIK, District Judge.

This matter comes before the Court on "INS Objections to Report and Recom-

mendation." Having considered the record that was before the Honorable Monica J. Benton, United States Magistrate Judge, and the memoranda and exhibits submitted since the Report and Recommendation was issued, the Court finds as follows:

Petitioner is a native of Ethiopia. He entered the United States as a refugee in 1991 and later acquired lawful permanent resident status. As a result of a January 31, 2000, conviction for delivery of cocaine, petitioner is now being detained by the INS under a final order of deportation. Petitioner's period of post-final-removal-order detention under 8 U.S.C. § 1231(a)(6) began to run on August 14, 2001. On September 18, 2001, the INS requested travel documents from the Embassy of Ethiopia. Officials from the Ethiopian Consulate interviewed petitioner by telephone but came away with the impression that petitioner was Eritrean, not Ethiopian. The request for travel documents was denied. The INS submitted a second request for travel documents to the Ethiopian Embassy in early January 2002. As of the date of this Order, the Ethiopian government has not responded to the INS' second request and no travel documents have been issued for petitioner. Petitioner's post-final-removal-order detention reached six months on February 14, 2002.

Magistrate Judge Benton recommends that petitioner be released because there is insufficient evidence to support the government's allegations that petitioner failed to cooperate and, even if those allegations are true, the INS has been unable to deport him for more than six months following the second request for travel documents. The United States objects to this recommendation, arguing that (1) the removal period should be extended because petitioner's lack of candor caused the delay in the issuance of travel documents and (2) petitioner has failed to meet his burden of proof under *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Section 241(a)(1)(C) of the Immigration and Nationality Act provides that "[t]he removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Whether this provision is applicable where petitioner's detention has already lasted far longer than the 90 days prescribed by the statute is not clear. Nevertheless, § 1231(a)(1)(C) evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him. The Supreme Court's reasoning in *Zadvydas* suggests that there is some constitutional limit to the amount of time an alien can be detained under this provision, but the Court need not decide that issue in this case.[1] Instead, the Court finds that peti-

---

1. Not only does the indefinite detention of an alien under 8 U.S.C. § 1231(a)(1)(C) raise many of the same constitutional issues that were at stake in *Zadvydas* and *Ma*, but the Court notes with some concern that the INS is increasingly, and somewhat indiscriminately, relying on claims of lack of cooperation to justify detentions that would otherwise violate *Zadvydas*. For instance, in *Seretse–Khama v. Ashcroft*, C02–0955(JDB) (D.D.C. July 22, 2002), the INS argued that the petitioner's honest and accurate responses to the interviewer's questions constituted an attempt to thwart his removal. Such an expansive view of "lack of cooperation" or "obstruction" is neither a fair characterization of the facts nor helpful to the reviewing courts. The INS should use this particular arrow with care lest it become a repetitious cry, oft heard but little heeded.

tioner has not met his burden of showing that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas,* 121 S.Ct. at 2505.

Petitioner's argument is based on a misapprehension of *Zadvydas.* The mere fact that six months has passed since petitioner was taken into INS custody does not satisfy his burden. While an alien's detention will no longer be presumed to be reasonable after six months, there is nothing in *Zadvydas* which suggests that the Court must or even should assume that any detention exceeding that length of time is unreasonable. Rather, the passage of time is simply the first step in the analysis. Petitioner must then provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." The Supreme Court's effort to promote uniformity by providing a presumptively reasonable period of detention "does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas,* 121 S.Ct. at 2505.

In some circumstance, the continuing failure of a destination country to respond to a request for travel documents may provide the Court with "good reason to believe" that deportation is not likely in the reasonably foreseeable future. For example, where the destination country's lack of response is combined with the INS' inability to explain the silence and the absence of any indication that the situation may change, continued detention is unreasonable and the alien should be released. *See, e.g., Mohamed v. Ashcroft,* C01–1747P (W.D.Wash. April 15, 2002). In other instances, however, a country's failure timely to respond may reflect nothing more than bureaucratic inertia, suggesting that while the issuance of travel documents may be a slow process, there is no substantive difficulty and the deportation remains foreseeable. *See, e.g., Singh v. Ashcroft,* C01–1947P (W.D.Wash. May 2, 2002). The record in the above-captioned matter supports the conclusion that the delay in issuing travel documents to petitioner arises from the fact that the Ethiopian Consulate is unsure of petitioner's nationality. Petitioner has not suggested any other cause of delay and has not provided any evidence of a more permanent obstruction to his deportation. Regardless of whether petitioner told the interviewer that he or his father was born in Eritrea, neither statement appears to have been true and it is likely that the delay in deportation will end as soon as the Ethiopian government's confusion over this issue is alleviated. In such circumstances, there is not "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." The INS and petitioner, working together, should be able to convince the government of Ethiopia that petitioner is, in fact, a native of that country. Petitioner has provided no reason to believe that, once Ethiopia's legitimate concerns are addressed, travel documents will not issue in the foreseeable future. Of course, overcoming the Ethiopian government's current misunderstanding (which has undoubtedly been memorialized in various reports and decision documents) may take some time and effort, but petitioner's deportation remains reasonably foreseeable even though it may not happen quickly. If petitioner chooses not to assist the INS in accomplishing his deportation, the process will likely take even longer. That does not mean, however, and petitioner has not shown, that the INS, acting alone through its normal channels, will be unable to correct the Ethiopian government's misapprehension regarding petitioner's nationality. Based on the existing record,

the Court finds that petitioner has not met his burden of showing no significant likelihood of deportation in the reasonably foreseeable future.

For all of the foregoing reasons, the petition for writ of habeas corpus is DENIED. The Clerk of Court is directed to send copies of this Order to counsel for both parties and to Magistrate Judge Benton.