Shibeshi LEMA, Petitioner–Appellant,

v.

U.S. IMMIGRATION AND NATURAL-IZATION SERVICE; John Ashcroft, Attorney General; Robert S. Coleman, Jr., Respondents–Appellees.

No. 02–35901.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2003.

Sept. 2, 2003.

Thomas W. Hillier, II, and Jay W. Stansell, Federal Public Defenders, Seattle, WA, for the Petitioner–Appellant.

James E. Grimes, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC, for the Respondents–Appellees.

Before: ALARCÓN, GOULD, and CLIFTON, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

In this appeal from the district court's denial of a habeas corpus petition, we must decide whether the Immigration and Naturalization Service's two-year continued detention of a removable alien is authorized by 8 U.S.C. § 1231(a)(1)(C) when the alien is refusing to cooperate fully with officials to secure travel documents from a foreign government. We hold that such an alien cannot meet his or her burden to show thereis no significant likelihood of removal in the reasonably foreseeable future and that the alien's continued detention therefore is authorized. We affirm the district court's judgment.

## I

Petitioner Shibeshi Lema is an Ethiopian national[1] being detained by the Immigration and Naturalization Service (INS) as an alien removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony (delivering cocaine). Lema has been held in INS custody awaiting the issuance of travel documents by Ethiopia for two years since an

---

1. Both parties agree that Lema is Ethiopian.

immigration judge ordered him removed from the United States in August 2001.

Lema applied to the Ethiopian Embassy for travel documents in September 2001, listing his nationality as "Eritrea[n]/Ethiopia[n]." Lema spoke on the telephone to an Ethiopian consular official on December 12, 2001. During that telephone conversation, Lema allegedly told the official that he is Eritrean, not Ethiopian.[2] Because Lema said he was Eritrean, Ethiopian officials decided not to grant him travel documents.[3] Lema has not reapplied to Ethiopia for travel documents or furnished evidence corroborative of his Ethiopian nationality to Ethiopia despite a request by the INS that he do so.[4] He remains in INS custody.[5]

Lema filed a habeas corpus petition with the district court on March 18, 2002, challenging his continued detention on the ground that he was being "indefinitely detained" without statutory authorization.

**2.** The fact that Lema had told the Ethiopian official he is Eritrean was communicated by the Ethiopian official to an INS official during a telephone conversation. Lema denies that he told the official he is Eritrean; rather, Lema claims he told the official his *father* was Eritrean. After reviewing the record, including the INS official's notes of his conversation with his Ethiopian counterpart, we conclude that a reasonable factfinder could find that Lema misrepresented his nationality. We therefore accept the INS's version of the conversation. *See Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir.1997) (describing the substantial evidence standard).

**3.** Ethiopia's decision not to grant Lema travel documents apparently was based solely on Lema's misrepresentation to Ethiopian officials in the telephone conversation and in his application for travel documents that he is Eritrean. Ethiopian officials apparently did not have access to other statements by Lema in which Lema created confusion as to his nationality. In these statements, Lema frequently contradicted himself. For example, Lema in 1989 told officials he was born in Dire–Dawa, Ethiopia. In 1991, he signed an

The district court denied the petition. *See Lema v. INS*, 214 F.Supp.2d 1116 (W.D.Wash.2002). Lema appeals.

## II

We review the district court's denial of Lema's habeas petition de novo, conducting the same inquiry as the district court. *See Singh v. Reno*, 113 F.3d 1512, 1514 (9th Cir.1997). Like the district court, we review the INS's factual findings for "substantial evidence," reversing only if the evidence is so compelling that no reasonable factfinder could fail to find the facts were as the alien alleged. *See id.*

Ordinarily, the INS must remove an alien in its custody within ninety days from the issuance of a final removal order. *See* 8 U.S.C. § 1231(a)(1)(A)-(B). An exception to this requirement is provided in 8 U.S.C. § 1231(a)(1)(C), which states:

asylum application stating that he was born in Eritrea (Eritrea was a province of Ethiopia until the 1990s, but Dire–Dawa, Ethiopia, was never part of Eritrea). In May 2001, Lema asserted in an application for withholding of removal that he was born in Asmara, Eritrea. And in August 2001, Lema stated that he was born in Ethiopia. Although Lema's frequent misrepresentations seriously undermine his credibility, it appears that only a couple of the misrepresentations were known to Ethiopian officials and were responsible for Ethiopia's not granting Lema travel documents.

**4.** On April 22, 2002, INS officials served on Lema a letter requesting that he provide the INS with copies of all passports, birth certificates, or other nationality documents; copies of correspondence evidencing his good faith efforts to obtain a passport from Ethiopia; and copies of responses from Ethiopia. Lema refused to comply (or even to accept the letter).

**5.** INS officials, on their own initiative, requested on January 3, 2002, that Ethiopia issue Lema travel documents. Ethiopia has not responded to that request.

The removal period shall be extended beyond a period of 90 days and the alien maŷ remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8 U.S.C. § 1231(a)(1)(C). The INS contends that Lema's continued detention is authorized by this exception. Lema counters that, under the Supreme Court's reasoning in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), Lema's continued detention in these circumstances constitutes an "indefinite detention" not authorized by the exception.

 Two recent decisions guide us here. First, the Supreme Court in *Zadvydas* interpreted 8 U.S.C. § 1231(a)(6)—a statute that authorizes post-removal-period detention (as does the statutory exception at issue here)—to limit implicitly an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States. *See Zadvydas*, 533 U.S. at 689, 121 S.Ct. 2491. The Court held that the statute, read in light of the Fifth Amendment's due process demands, does not permit "indefinite detention" of an alien and that federal courts should grant an alien habeas relief when there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 689, 699–700, 121 S.Ct. 2491. The Court recognized, however, that the government's detention of a removable alien

for up to six months is presumptively reasonable. *Id.* at 701, 121 S.Ct. 2491.[6]

Second, we held in *Pelich v. INS*, 329 F.3d 1057, 1057 (9th Cir.2003), that, notwithstanding *Zadvydas*, the statutory exception of 8 U.S.C. § 1231(a)(1)(C)(the provision at issue here) authorizes the INS to continue detaining an alien whose refusal to apply in good faith for travel documents prevents the INS from removing him from the United States. We explained that the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when the alien "has the keys [to freedom] in his pocket and could likely effectuate his removal by providing the information requested by the INS." *See Pelich*, 329 F.3d at 1060 (internal quotation marks omitted). We held that a "detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Id.*

 We hold today, consistent with *Zadvydas* and *Pelich*, that when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future. We cannot know whether an alien's removal is a "remote possibility," *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491, until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate

---

6. Under *Zadvydas*, the first six months of detention are presumptively permissible. 533 U.S. at 701, 121 S.Ct. 2491. After six months, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut the showing. *Id.*

And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" shrinks. *Id.* We hold that this *Zadvydas* framework applies to challenges to detentions allegedly authorized under 8 U.S.C. § 1231(a)(1)(C).

fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal. Moreover, the due process concerns that motivated the Supreme Court in *Zadvydas* do not apply when an alien may have "the keys [to freedom] in his pocket." *See Pelich,* 329 F.3d at 1060 (internal quotation marks omitted).[7] We conclude that 8 U.S.C. § 1231(a)(1)(C), interpreted mindful of the concerns underlying *Zadvydas* and *Pelich,* authorizes the INS's continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials to obtain travel documents.

Here, Ethiopia's continuing refusal to provide Lema with travel documents appears to be a result of Lema's continuing failure to cooperate. In the two years since Lema first applied for travel documents, Lema has not furnished the Ethiopian government or the INS with any new evidence (such as affidavits from family members) to support his claim of Ethiopian nationality. Lema has not filed a new request for travel documents. Lema has not attempted to contact the Ethiopian consulate. Lema has refused to comply with an INS request, made in April 2002,

that he provide the INS with certain documents. If Lema were to cooperate with the INS to dispel the Ethiopian government's confusion over his nationality, the Ethiopian government might issue travel documents in the reasonably foreseeable future.[8]

 We conclude that the record contains substantial evidence that Ethiopia's reluctance to issue Lema travel documents is caused by Lema's continuing failure to cooperate with United States and Ethiopian officials to secure travel documents from Ethiopia. Lema therefore cannot meet his burden to show there is no significant likelihood of removal in the reasonably foreseeable future. Lema's continued detention is authorized by 8 U.S.C. § 1231(a)(1)(C), and the district court properly denied Lema's habeas corpus petition.[9]

**AFFIRMED.**

---

7. We also believe that removable aliens should not be rewarded with release into the United States for their bad behavior in refusing to assist officials to effect their removal. *Cf. United States v. McCormac,* 309 F.3d 623, 626–27 (9th Cir.2002) (declining to hold that "the district court abused its discretion in denying a mistrial when the defendant's own misconduct caused the alleged impartiality of the jurors"); *United States v. Harris,* 2 F.3d 1452, 1456 (7th Cir.1993) (holding that a defendant should not profit from his own outburst).

8. As INS District Director George L. Morones opined, "[i]f [Lema] were to be truthful and cooperative with the Ethiopian consul[ate], his removal would be highly likely in the reasonably foreseeable future."

9. Even though we conclude that habeas relief is not warranted under the circumstances presented by this case, Lema is free to file another habeas petition if, after Lema cooperates fully and honestly with the INS to effect his removal, and a reasonable time period then elapses without result, Lema's removal is not significantly likely in the reasonably foreseeable future. We note that if Lema files another habeas petition under 28 U.S.C. § 2241 in the future, that petition would not be subject to the "second or successive" prohibitions set forth in 28 U.S.C. § 2244 of the Anti–Terrorism and Effective Death Penalty Act (AEDPA) of 1996. *See Barapind v. Reno,* 225 F.3d 1100, 1111 (9th Cir.2000) (holding that AEDPA's gatekeeping provisions in § 2244 do not apply to "a § 2241 petition filed by an INS detainee"). Under the non-AEDPA standards that would apply to any

future habeas petition by Lema, "a habeas court must adjudicate even a successive habeas claim when required to do so by the 'ends of justice.'" *See Schlup v. Delo,* 513 U.S. 298, 319–22, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also* Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure § 28.4 (4th ed.2001) (discussing standards in same-claim successive petition habeas cases that continue to apply in cases not governed by AEDPA). Were the INS in the future to indefinitely detain Lema,

despite his good faith efforts to secure travel documents, the "ends of justice" would require us to review Lema's successive habeas petition.

In such a future case, Ethiopia's alleged bureaucratic inertia—of which the record contains some evidence—would be relevant to the question of whether Lema's removal is significantly likely in the reasonably foreseeable future, and the dictates of *Zadvydas* then could be assessed as applied to a cooperating Lema.