[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12915

_____

D.C. Docket No. 4:17-cv-01793-RDP-JHE

BALBIR SINGH,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL, et al.,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 23, 2019)

Before WILLIAM PRYOR, MARTIN, and SUTTON,* Circuit Judges.

_____

* Honorable Jeffrey S. Sutton, United States Circuit Judge for the Sixth Circuit, sitting by
designation.

MARTIN, Circuit Judge:

Balbir Singh is a citizen of India subject to a final order of removal. Here we consider Mr. Singh's appeal from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241. Mr. Singh has been in the custody of Immigration and Customs Enforcement ("ICE") for over 31 months and argues that he is entitled to release under the Supreme Court's ruling in Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001). After careful review, and with the benefit of oral argument, we conclude that this record was insufficient for the district court to deny Mr. Singh's petition. We therefore remand for further proceedings.

## I.

Mr. Singh is a native and citizen of India. He entered the United States sometime before 1983. In 1994, he was convicted of murder in California and sentenced to 16 years to life in prison. On September 23, 2016, Mr. Singh was transferred from the custody of California to the custody of ICE and placed in removal proceedings. He said he was afraid to return to India and received a reasonable fear interview on October 6, 2016. His interview resulted in a negative decision. Mr. Singh requested review of his negative fear determination and on October 21, 2016 an Immigration Judge found that he had not established a possibility of torture or persecution upon his being returned to India. Mr. Singh filed a petition for review and request for stay of removal with the Ninth Circuit

2

Court of Appeals on November 25, 2016.  On March 8, 2017, Mr. Singh was transferred to Etowah County Detention Center in Alabama.  On April 19, 2017, the Ninth Circuit denied his request for a stay of removal.

On October 24, 2017, Mr. Singh filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the U.S. District Court for the Northern District of Alabama.  He argued that, because six months had passed since his order of removal became final and his removal was not reasonably foreseeable, the Fifth Amendment Due Process Clause did not permit ICE to continue detaining him.  The District Court ordered the government to show cause why Mr. Singh's petition should not be granted.

In response to the show cause order, the government argued that Mr. Singh's ongoing detention was permissible because he had taken actions to delay his removal and because his removal was significantly likely in the foreseeable future.  The government submitted the affidavit of Bryan S. Pitman, who is a Supervisory Detention and Deportation Officer with the United States Department of Homeland Security ("DHS").  In his affidavit, Mr. Pitman stated that Mr. Singh had been "evasive" regarding his birth certificate, passport, and the whereabouts of his family members.  He stated that Mr. Singh continued to return incomplete travel document applications to his case officer and that, without a complete and accurate travel document application, the Indian Consulate would not be able to issue a

3

travel document.  He also stated that, based on his experience, ICE would be able to obtain a travel document for Mr. Singh in the reasonably foreseeable future.

The District Court ordered Mr. Singh to respond with counter-affidavits or documents demonstrating the existence of a genuine issue of material fact.  Mr. Singh responded and submitted his own affidavit.  In it, he stated that "[w]henever possible" he had complied with all of the government's requests for information and travel documents.  However, while the government had requested his passport and birth certificate, he did not have those documents.  He explained that the Indian travel document application requests a phone number in India, but he was not able to give one because he has not been to India in decades and does not know the phone number of anyone there.  He also stated that he had not been evasive regarding the location of his birth certificate, passport, or the location of his family.  Rather, he "simply [did] not know the information" requested by the government, so it was impossible for him to comply with the government's requests.

Based on the papers alone, the District Court denied Mr. Singh's petition.  It held that Mr. Singh was not entitled to habeas relief because he had not "presented a good reason to believe that his removal [was] significantly unlikely in the reasonably foreseeable future" and had "acted to prevent his removal."  Mr. Singh timely filed this appeal.

4

## II.

We review <u>de novo</u> the denial of a petition for habeas corpus under 28 U.S.C. § 2241.  <u>Bowers v. Keller</u>, 651 F.3d 1277, 1291 (11th Cir. 2011) (per curiam).  We review factual findings in a habeas corpus proceeding for clear error. <u>Byrd v. Hasty</u>, 142 F.3d 1395, 1396 (11th Cir. 1998).

## III.

Once a noncitizen's order of removal becomes administratively final, the Government "shall" remove that person within 90 days.  8 U.S.C. § 1231(a)(1)(A). Section 1231 provides that noncitizens with final removal orders shall be detained during the 90-day removal period, <u>id.</u> § 1231(a)(2), which begins on the date the removal order becomes administratively final or, if the order is judicially reviewed and the court enters a stay, the date of the court's final order.  <u>Id.</u> § 1231(a)(1)(B)(i), (ii).  The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure" <u>or</u> (2) "conspires or acts to prevent the alien's removal" <u>Id.</u> § 1231(a)(1)(C).

Noncitizens who have been ordered removed because of certain criminal convictions, or those whom the Attorney General has found "to be a risk to the community or unlikely to comply with the order of removal, may be detained

5

beyond the removal period." Id. § 1231(a)(6). In Zadvydas, the Supreme Court held that the Constitution limits detention of lawfully-admitted noncitizens under § 1231(a)(6) to "a period reasonably necessary to bring about th[e] alien's removal" and "does not permit indefinite detention." Id. at 689, 121 S. Ct. at 2498; see also Clark v. Martinez, 543 U.S. 371, 377–79, 125 S. Ct. 716, 722–23 (2005) (extending Zadvydas to cover noncitizens "who have not yet gained initial admission to" the United States and are detained past their removal periods under section 1231(a)(6) (citation and internal quotation marks omitted)). The Zadvydas opinion established that six months is a "presumptively reasonable period of detention" for a removable noncitizen awaiting deportation. Id. at 701, 121 S. Ct. at 2504–05. Then, after the six-month period, if a detainee "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government "must respond with evidence sufficient to rebut that showing." Id. at 701, 121 S. Ct. at 2505. If the government fails to rebut the detainee's assertion, he must be released. Id.

## IV.

The threshold question for Mr. Singh is whether his removal period extended by law because he did not return a complete travel document application. 8 U.S.C. § 1231(a)(1)(C). If the removal period did not extend, then Immigration and Customs Enforcement has detained Mr. Singh for well over the presumptively

permissible six-month period, and Mr. Singh needs to establish that there is no significant likelihood of removal in the reasonably foreseeable future to shift the burden to the government. Zadvydas, 533 U.S.at 701. But if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain him because "the keys to [Mr. Singh's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested," so he "cannot convincingly argue that there is no significant likelihood of removal." Pelich v. Immigration & Naturalization Serv., 329 F.3d 1057, 1060 (9th Cir. 2003) (citation and internal quotation marks omitted) (alterations adopted). "The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his own detention." Id. To resolve this question, we must decide whether § 1231(a)(1)(C) requires that Mr. Singh returned the incomplete application in bad faith, i.e., whether § 1231(a)(1) required Mr. Singh to have intentionally withheld the necessary information in order to apply. We hold that it does.

Our analysis begins and ends with the statutory text. Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) ("Statutory interpretation, as we always say, begins with the text." (citing Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 251, 130 S. Ct. 2149, 2156 (2010)). "It is a cardinal rule" of statutory interpretation that we try to give "effect . . . to every clause . . . of a statute." United States v. Whyte, 928

F.3d 1317, 1328 (11th Cir. 2019) (citation and internal quotation marks omitted));

see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of

Legal Texts § 26, at 174 (2012) ("If possible, every word and every provision is to

be given effect . . . ."). And where a statute contains a conflict between a general

and a specific provision, "the specific provision prevails." Id. § 28, at 183; see also

RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645, 132 S.

Ct. 2065, 2071 (2012) ("It is a commonplace of statutory construction that the

specific governs the general." (alterations adopted) (citation and internal quotation

marks omitted)).

Section 1231(a)(1)(C) extends the removal period if the noncitizen either (1)

"fails or refuses to make timely application in good faith for travel or other

documents necessary to the alien's departure" or (2) "conspires or acts to prevent

the alien's removal." 8 U.S.C. § 1231(a)(1)(C). The first condition of extension

requires that a noncitizen refuse to make the application in good faith. Because the

conduct at issue involves an application for travel documents, the text makes it

clear that bad faith must be proven before the removal period can be extended for

failure to return a complete and accurate travel application.

The government argues that the second condition of extension, the "acts"

provision, also covers Singh's conduct, but that it contains no intent requirement.

Under that proposed interpretation, the first method would extend the removal

8

period if the noncitizen failed to provide the required travel documentation in good faith, and the second method would extend the removal period if the noncitizen failed to provide the required travel documentation with any state of mind.

The government's reading would render the first provision for extending the removal period surplusage. RadLAX, 566 U.S. at 645, 132 S. Ct. at 2071 (explaining that the general/specific canon may be applied to avoid "the superfluity of a specific provision that is swallowed by the general one"); Scalia & Garner, Reading Law § 26, at 174 ("No[] [word or provision] should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."). That is, if the "conspires or acts" provision covers the return of an incomplete travel application, then Congress did not need to carve out the circumstance of a bad faith failure or refusal to make an application. But Congress did carve out that circumstance, and it required that the noncitizen fail to complete the application in "good faith." 8 U.S.C. § 1231(a)(1)(C); see also RadLAX, 566 U.S. at 646, 132 S. Ct. at 2071 ("[G]eneral language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment." (citation and internal quotation marks omitted)). Because we must give "effect . . . to every clause . . . of a statute," Whyte, 928 F.3d at 1328, and because the statutory text evidences that Congress intended the return of an incomplete travel application be done in bad

9

faith before the removal period can be extended, the return of an incomplete application is exclusively controlled by the first extension method, which requires "timely application in good faith," 8 U.S.C. § 1231(a)(1)(C) (emphasis added).

## V.

On this record, we cannot evaluate whether Mr. Singh's removal period has been extended by operation of § 1231(a)(1)(C). The District Court held that Mr. Singh "acted to prevent his removal" by "fail[ing] to provide . . . a complete and accurate travel document application." But, as described above, whether Mr. Singh "acted to prevent his removal" is not the question: the question is whether he returned his application in good faith.

Both the government and Mr. Singh submitted competing affidavits, with the government contending that Mr. Singh was evasive and Mr. Singh contending that he was not evasive and that he completed the application to the best of his ability. The District Court credited Mr. Pitman's affidavit, and appears to have discredited Mr. Singh's, but it did so without any corroborating evidence.

These conflicting statements cannot be resolved on the face of the affidavits. It is well-established that a court may not decide a habeas corpus petition based on affidavits alone when there are factually contested issues. Allen v. Alabama, 728 F.2d 1384, 1389 (11th Cir. 1984) ("Although a habeas corpus petition may be disposed of on the basis of affidavits, contested facts ordinarily may not be decided

10

on affidavits alone unless there is other evidence in the record supporting them.");

see also Scott v. Estelle, 567 F.2d 632, 633 (5th Cir. 1978) ("[E]vidence in habeas

corpus cases may be adduced . . . by affidavit. Ordinarily, however, contested fact

issues cannot be decided on affidavits alone." (citation omitted)).

This circumstance requires a remand for an evidentiary hearing.

## VI.

Because there is insufficient evidence to evaluate the District Court's denial

of Mr. Singh's petition for a writ of habeas corpus, we **REVERSE and REMAND**

for further development of the factual record.