United States Court of Appeals
Fifth Circuit

**F I L E D**

May 10, 2004

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30859

_____

MOUSA ELIAS SALAMEH SHOKEH,

Petitioner - Appellant,

versus

CARYL THOMPSON; DAVID VENTURELLA; JAMES W. ZIGLAR; BUREAU OF
IMMIGRATION AND CUSTOMS ENFORCEMENT; JOHN ASHCROFT,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Mousa Elias Salameh Shokeh ("Shokeh") appeals the district court's denial of his pro

se 28 U.S.C. § 2241 habeas petition, arguing that the district court erred in holding that his

post-removal-order release was permissibly conditioned on his posting $5,000 bond.

Because we hold that the amount of a bond so imposed must be reasonable and

"appropriate in the circumstances," and because it is uncertain whether the $5,000 bond

was reasonable given Shokeh's circumstances, we reverse and remand for further findings on whether the $5,000 bond is reasonable.

## I. FACTS AND PROCEEDINGS

Claiming Jordanian nationality, Shokeh was admitted to the United States at Newark, New Jersey, on November 27, 1995, as a conditional resident. On December 17, 1997, the INS[1] approved his request for removal of the conditional basis of his permanent resident status, thereby making him a lawful permanent resident.

On May 29, 2002, the INS issued a Notice to Appear charging Shokeh as removable, and on June 3, 2002, the INS took Shokeh into custody pursuant to an arrest warrant. At that time, the INS determined that he should be detained without bond.

On July 12, 2002, Shokeh appeared before an Immigration Judge ("IJ") for a bond redetermination hearing; the IJ denied Shokeh's request for a change in custody status. After several preliminary removal hearings, Shokeh appeared before the IJ for his merits hearing on September 24, 2002, and the IJ ordered him deported to Israel or, in the alternative, to Palestine. Both Shokeh and the INS waived their respective rights to appeal this decision of the IJ. Shokeh therefore became the subject of a final order of removal on September 24, 2002.

The INS unsuccessfully attempted to procure travel documents for Shokeh, and, on

---

[1] In March 2003, most functions of the INS were transferred into the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement ("BICE"). For simplicity, we refer to the agency throughout this opinion as the INS.

January 24, 2003, issued a decision to continue detention following file review. On February 13, 2003, Shokeh filed a § 2241 habeas petition arguing that his continued detention beyond six months following the date his removal order became final would violate his constitutional and statutory rights as set forth in Zadvydas v. Davis, 533 U.S. 678 (2001).[2]

On February 28, 2003, the INS issued its Release on Bond Notification for Shokeh. This notification authorizes Shokeh's release from custody under an order of supervision, pending removal, upon the posting of a $5,000 bond. The Release concedes that "removal does not appear reasonably foreseeable at this time," and does not state that Shokeh is a danger to the community.[3] Shokeh has not posted bond and therefore remains in custody.

Shokeh filed a habeas petition challenging the imposition of bond as a condition of his release. The district court, citing 8 C.F.R. § 241.5,[4] denied Shokeh's petition and

---

[2] In Zadvydas the Supreme Court held that the post-removal-order detention statute, 8 U.S.C. § 1231(a)(6), implicitly limits an immigrant's detention to a period reasonably necessary to bring about that immigrant's removal from the United States. Zadvydas v. Davis, 533 U.S. 678, 688-98 (2001). The statute does not permit indefinite detention. Id. The Court found that the referenced "reasonably necessary" period should be limited to six months, after which an immigrant's showing that there is no significant likelihood of removal in the reasonably foreseeable future places the burden on the Government to furnish sufficient rebuttal evidence. Id. at 697-702.

[3] The memo does not discuss whether Shokeh is a danger to the community. Its silence on this issue strongly implies that Shokeh is not a danger to the community. If Shokeh were a danger to the community, different regulations and considerations would govern his release. See, e.g., 8 C.F.R. §§ 241.4, 1241.4 (West 2004).

[4] Section 241.5 governs conditions of release after the removal order. It lists the posting of a bond as a permissible condition of supervised release. 8 C.F.R. § 241.5(b).

dismissed it with prejudice, reasoning that bond is a permissible condition of supervised release.  Shokeh timely filed a notice of appeal; this appeal follows.

## II.  JURISDICTION

This Court has jurisdiction to review a confined immigrant's application for a writ of habeas corpus.  INS v. St. Cyr, 533 U.S. 289, 312-13 (2001) (holding that "habeas jurisdiction under § 2241 was not repealed by . . . [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, "IIRIRA"]").  See also Bravo v. Ashcroft, 341 F.3d 590, 592-93 (5th Cir. 2003) (noting that "federal courts retain habeas jurisdiction to review statutory and constitutional claims"); Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999) (finding jurisdiction to hear a habeas challenge to a deportable immigrant's continued detention), overruled on other grounds by Zadvydas v. Davis, 533 U.S. 678 (2001).

As in Zadvydas v. Davis, 533 U.S. 678 (2001), where the Supreme Court held that 8 U.S.C. § 1231 allows the Attorney General to confine a post-removal-order immigrant only for a reasonable period, Shokeh "challenge[s] the extent of the Attorney General's authority under the post-removal-order detention statute. . . . [T]he extent of that authority is not a matter of discretion."  Zadvydas, 533 U.S. at 687.  "[T]he [post-removal-order statute] contain[s] an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."  Id. at 682.

The Government argues that this Court lacks jurisdiction because IIRIRA Section 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii) (hereinafter "Section (B)(ii)"), is a "catch-all provision ensuring that [the jurisdiction-stripping] proscriptions implemented by Congress

4

cover all unenumerated provisions governing discretionary relief." Section (B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphases added).

Section (B)(ii) does not lend itself to the interpretation advocated by the Government. Nowhere is it "specified" that the bond determination is a "discretionary" decision of the Attorney General. Compare 8 C.F.R. § 241.5(b) (2004) (providing that the Attorney General "may require the positing of bond in an amount determined by the [Attorney General] to be sufficient to ensure compliance with the conditions of the order, including surrender for removal," but failing to "specify" that that determination is "discretionary"), with 8 C.F.R. § 241.5(c) (noting that the Attorney General "may, in his or her discretion, grant employment authorization . . . .") (emphasis added). Accord Spencer Enters., Inc. v. United States, 345 F.3d 683, 689-90 (9th Cir. 2003) (holding that the jurisdictional bar in Section (B)(ii) applies only to acts over which a statute gives the Attorney General pure discretion unguided by legal standards or statutory guidelines). Simply, it is not "specified" that the bond determination is discretionary. Furthermore, whether to make that determination is not entirely within the "authority" of the Attorney General—the immigrant's release is commanded by 8 U.S.C. § 1231 as interpreted in Zadvydas. Therefore, the bond determination is not discretionary and this Court has jurisdiction to consider it.

Situations "involv[ing] application of the law to factual determinations" are reviewable, cf. Gonzalez-Torres v. INS, 213 F.3d 899, 901 (5th Cir. 2000); situations

5

involving discretionary relief generally are unreviewable. The setting of a bond for a post-removal-order immigrant clearly falls into the former category. In fact, the very regulation cited by the Government for its argument on the merits that a condition of bond is permissible, 8 C.F.R. § 241.5(b), authorizes a "bond in an amount determined by the [Attorney General] . . . ." (emphasis added). Determinations (application of law to facts) are reviewable; explicitly identified discretionary actions are not. See Spencer, 345 F.3d at 689-90; c.f. Gonzalez-Torres, 213 F.3d at 901.

Based on the Supreme Court's clear language in Zadvydas and St. Cyr, and because "the extent of the [Attorney General's authority under the post-removal-order detention statute] is not a matter of discretion," Zadvydas, 533 U.S. at 687, this Court has jurisdiction to hear Shokeh's claim.

## III. STANDARD OF REVIEW

In reviewing denials of habeas corpus relief, this Court reviews the district court's findings of fact for clear error, but reviews issues of law de novo. Barnard v. Collins, 958 F.2d 634, 636 (5th Cir. 1992).

## IV. DISCUSSION

A.    Zadvydas and the legal framework surrounding post-removal-order immigrants.

After a final order of removal is entered, 8 U.S.C. § 1231 provides for detention of immigrants pending actual removal. Faced with the issue "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States," the Supreme Court held in Zadvydas v. Davis, 533

6

U.S. 678 (2001), that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [8 U.S.C. § 1231]." Zadvydas, 533 U.S. at 699. The Court explained that § 1231 has two main purposes: (1) "ensuring the appearance of aliens at future immigration proceedings"; and (2) "preventing danger to the community." 533 U.S. at 690. "[B]y definition the first justification—preventing flight—is weak or nonexistent where removal seems a remote possibility at best." Id. And while the rationale behind protecting the community "does not necessarily diminish in force over time . . . [the Supreme Court has] upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections."[5] Id. at 690-91. Because cessante ratione legis cessat ipse lex ("the rationale of a legal rule no longer being applicable, that rule itself no longer applies"), id. at 699, the Court read a reasonableness term into the statute.

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

---

[5] Shokeh's Release on Bond Notification makes no mention that further confinement is necessary to prevent him from being a "danger to the community." Consequently, his continued detention, and any conditions placed on his release, should be analyzed only with regard to the first goal of 8 U.S.C. § 1231, i.e., "ensuring the appearance of aliens at future immigration proceedings." See Zadvydas, 533 U.S. at 690 (citation and quotations omitted). Cf. 8 C.F.R. §§ 241.4, 241.13, 1241.4 (West 2004).

Zadvydas, 533 U.S. at 699-700 (citing, inter alia, 8 C.F.R. § 241.5 (2001)) (emphasis added). The Supreme Court was especially concerned that the "civil confinement here at issue is not limited, but potentially permanent." Id. at 691.

Though the Court decided Zadvydas on statutory grounds, it noted that serious constitutional questions were present. Zadvydas, 533 U.S. at 690, 695 (noting that a statute permitting indefinite detention might violate the Fifth Amendment's Due Process Clause).

B.      Bond is a permissible condition of post-removal-order release.

Shokeh argues that because he is a post-removal-order immigrant whose "removal does not appear reasonably foreseeable at this time," his release cannot be conditioned upon posting a bond because bond is not mentioned in the statute under which he is being detained. See 8 U.S.C. § 1231. The Government maintains that in Zadvydas the Supreme Court approved of bond as a condition of release for a post-removal-order immigrant. See Zadvydas, 533 U.S. at 699-700. Furthermore, the Government contends, regulations promulgated by the Attorney General under his broad authority to interpret immigration statutes explicitly permit bond. See 8 C.F.R. §§ 241.4, 241.5, 241.13 (West 2004).

Although 8 U.S.C. § 1231 does not list bond as a condition of release, in Zadvydas the Court noted that "if removal is not reasonably foreseeable[,] . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." Zadvydas, 533 U.S. at 699-700 (citing, inter alia, 8 C.F.R. § 241.5 (2001)). While Zadvydas does not explicitly mention bond, the opinion does cite to

8

a regulation—8 C.F.R. § 241.5 (promulgated by the Attorney General pursuant to his power under 8 U.S.C. § 1103)[6]—which does allow the conditioning of release upon the posting of bond. See 8 C.F.R. § 241.5(b) ("An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal.").[7]

Given this language in Zadvydas, we hold that conditioning a post-removal-order immigrant's release upon the posting of a bond is permissible. The one circuit court to have considered this question reached the same conclusion. Doan v. INS, 311 F.3d 1160 (9th Cir. 2002) (holding that "a bond is well within the kinds of conditions contemplated by the Supreme Court in Zadvydas," and noting that "[a]lthough the statute authorizing terms of supervision, 8 U.S.C. § 1231(a)(3) and (6), does not expressly authorize a bond, it does not exclude such a condition.").

C.  A post-removal-order bond must be reasonable and "appropriate in the circumstances."

---

[6] "Because Congress has delegated to the Attorney General significant responsibility over immigration matters, his construction of immigration statutes is entitled to considerable deference." Mireles-Valdez v. Ashcroft, 349 F.3d 213, 215 (5th Cir. 2003) (citing 8 U.S.C. § 1103(a)(1) ("[The Attorney General] shall be charged with the administration and enforcement of this chapter [8 U.S.C. §§ 1101-1537] and all other laws relating to the immigration and naturalization of aliens")).

[7] Although it appears that Shokeh's release pending posting of the bond is governed by 8 C.F.R. § 241.13, which provides that it applies where, as here, the "the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future," § 241.13 specifically incorporates the conditions detailed in § 241.5. 8 C.F.R. § 241.13(h) ("The order of supervision shall include all of the conditions provided in . . . [8 C.F.R.] § 241.5.").

Shokeh challenges the imposition of the $5,000 bond in his case, arguing that the amount of the bond is "unreasonable" and "has resulted in [his] indefinite detention" because he is unable to pay the bond.[8]  As the Ninth Circuit noted in Doan, "serious questions may arise concerning the reasonableness of the amount of the bond if it has the effect of preventing an alien's release."  Doan, 311 F.3d at 1162.[9]

In Zadvydas the Supreme Court interpreted "[8 U.S.C. § 1231] to contain an implicit 'reasonable time' limitation . . . ."  Zadvydas, 533 U.S. at 682.  See also id. at 690 ("[W]here detention's goal is no longer practically attainable, detention no longer bear[s a] reasonable relation to the purpose for which the individual [was] committed.") (citations and quotations omitted); id. at 699 (noting that the habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the

---

[8] Inexplicably, the Government does not address this issue in its brief, arguing only that the bond decision "was factually based."

[9] Shokeh also contests the amount of the bond under the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eight Amendment.  Because we construe the statute to include a reasonableness term in the amount of the bond, we need not reach these constitutional questions.  See Zadvydas 533 U.S. at 689 (noting that it is a cardinal principle of statutory interpretation that a court should first decide whether the statute may be interpreted in a manner as to avoid the constitutional question).

Additionally, Shokeh argues that he was denied equal protection because other immigrants, who were not required to post a bond prior to release from detention, committed crimes more serious than those he committed.  This claim is presented for the first time on appeal and it raises disputed factual issues.  For these reasons we decline to consider it.  See Greenberg v. Crossroads Sys., Inc., No. 03-50311, 2004 WL 624766, at *9 (5th Cir. Apr. 14, 2004) (refusing to review an issue raised for the first time on appeal and noting that that policy is "especially [important] where the assertion first raised on appeal is factual"); see also Kelly v. Foti, 77 F.3d 819, 822 (5th Cir. 1996).

alien's presence at the moment of removal").

Special solicitude for this reasonableness requirement must be shown here because physical confinement, whether criminal or civil, implicates a "fundamental liberty interest" and because the length of the confinement is potentially unlimited. As the Supreme Court commented in Zadvydas:

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects. . . . The civil confinement here at issue is not limited, but potentially permanent.

Zadvydas, 533 U.S. at 690-91 (citations omitted). The Court continued that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690.

Following this rationale, no less of a problem arises if indefinite detention were caused by the inability to pay a bond. Indeed, the language of Zadvydas compels the conclusion that the bond must be low enough that the immigrant is able to meet it.[10] See also Williams v. Illinois, 399 U.S. 235, 243 (1970) (holding, in a case where the maximum time of imprisonment was extended because an indigent defendant was unable to pay a fine and court costs, "that a State may not constitutionally imprison beyond the maximum

---

[10] If an immigrant were to decide not to pay a bond that he could afford, the constitutional problem dissipates, as his confinement would then be based on his choice not to pay rather than a condition that he is simply unable to satisfy. In such a case, the bond would not be "unreasonable," even if the effect of his decision not to pay were extreme.

duration fixed by statute a defendant who is financially unable to pay a fine").[11]  "[T]he alien's release [post-removal-order] may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ."  Zadvydas, 533 U.S. at 700 (emphasis added).  Cf. United States ex rel. Pirinsky v. Shaughnessy, 177 F.2d 708, 709 (2d Cir. 1949) (holding that bail of $25,000 for an immigrant in deportation proceedings was "unreasonable" and noting that the amount of bail "in each case must be individual as to the amount reasonably designed to insure the alien's necessary attendance upon the proceedings").

The Zadvydas Court was troubled by the "potentially permanent" nature of the detention, 533 U.S. at 690, and that concern is not ameliorated by release conditional on bond that the immigrant is unable to pay.  The Supreme Court again emphasized the importance of the duration of detention in Demore v. Kim, 538 U.S. 510 (2003).  In Kim the Court upheld mandatory detention during removal proceedings of immigrants previously convicted of certain criminal offences, in part, because of the "very limited time of the detention at stake under [the challenged statute] . . . ."  Demore v. Kim, 538 U.S. 510, 123 S. Ct. 1708, 1721 n.12 (2003).[12]  Because of the Zadvydas Court's focus on "reasonableness,"

---

[11] While Williams is a criminal case and Shokeh's detention under immigration statutes is civil in nature, Williams's holding seems equally applicable in either context. There is scant reason why one would be less concerned with detention exceeding the statutory maximum due to inability to pay a fine in the criminal context than with detention exceeding the statutory maximum (six months as established by Zadvydas) due to inability to post bond in a civil proceeding.

[12] The Kim Court noted that it was relying on Government figures demonstrating that "in 85% of the cases in which immigrants are detained pursuant to [the challenged

we hold that when a bond is one of the conditions of release, that bond must be reasonable and "appropriate in the circumstances." See Zadvydas, 533 U.S. at 700; cf. Doan, 311 F.3d at 1162. We further hold that a bond that has the effect of preventing an immigrant's release because of inability to pay and that results in "potentially permanent" detention is presumptively unreasonable. See Williams v. Illinois, 399 U.S. at 243.

D.    Whether Shokeh's post-removal-order bond is "appropriate in the circumstances."

The focus on conditions "appropriate in the circumstances" precludes any bright-line rule concerning whether a certain bond amount is reasonable. For example, in Doan the Ninth Circuit did not even consider whether a $10,000 bond was reasonable, finding the issue moot because Doan's family paid the bond immediately. In the instant case, Shokeh's Release on Bond Notification was issued by the INS more than fourteen months ago, on February 28, 2003, yet Shokeh remains in custody, professing an inability to pay. Because the Government wishes to condition Shokeh's release on bond, and because the Government sets the amount of the bond, it must be established that the level of that bond is reasonable and appropriate in the circumstances.

After holding that posting of a bond is a permissible condition of release, the district court did not consider whether the $5,000 bond at issue in this case is reasonable and

---

statute], removal proceedings are completed in an average time of 47 days and a median of 30 days[, while i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." Demore v. Kim, 538 U.S. 510, 123 S. Ct. 1708, 1721 n.12 (2003). While the figures relied upon by the Court were disputed, the Court's focus on the apparent limited nature of the detentions is clear.

appropriate in the circumstances. Shokeh attached a copy of his detention center bank account stating the account's balance as of September 12, 2003 was $16.64. He also stated that because of the loss of his earnings while in detention, his wife and child now reside in public housing. The Government's brief summarily concludes that "the Attorney General's bond decision was factually based," yet offers no evidence to support that conclusion. Because the reasonableness of the bond is dependent on facts not fully developed in the record, we remand this case for further factual findings concerning Shokeh's access to assets, and for the ultimate legal conclusion as to whether Shokeh's $5,000 bond was reasonable and appropriate in the circumstances.

## V. CONCLUSION

Based on the holding and rationale of Zadvydas, we hold that: post-removal-order release may be conditioned upon the posting of a bond; the amount of that bond must be reasonable in the circumstances; and a bond that has the effect of preventing an immigrant's release because of inability to pay and that results in "potentially permanent" detention is presumptively unreasonable. Therefore, we REVERSE the district court's denial of Shokeh's § 2241 petition, and REMAND for findings as to whether Shokeh's $5,000 bond was reasonable and appropriate in the circumstances.

14