**Fola OLAJIDE, Petitioner,**

v.

**B.I.C.E., et al., Respondents.**

No. 1:05CV626(TSE/TCB).

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 30, 2005.

Fola Olajide, Farmville, VA, pro se.

Ralph Andrew Price, Jr., United States Attorney's Office, Alexandria, VA, for Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *pro se* habeas petition pursuant to 28 U.S.C. § 2241 is the latest chapter in the saga of an inadmissible alien's determined effort to avoid both removal and detention pending removal. He mistakenly believes he has hit upon the formula for doing so: first, to take actions that frustrate and delay his removal and then to complain that the delay in his removal warrants his release under *Zadvydas*. This formula fails, for like the orphan who sought sympathy after murdering his parents, petitioner cannot claim that his pre-removal detention is unreasonably long when he is the cause of the delay in his removal.

## I.

Olajide,[1] a Nigerian national born in Lagos, Nigeria, first came to the United States on January 4, 1989, on a student visa. In time he ran afoul of the law by passing a forged check. He pled guilty in the Circuit Court for Montgomery County, Maryland, to the crimes of uttering a forged check and theft. Thereafter, on January 26, 1995, an immigration judge ordered petitioner deported. *In re Olajide*, No. A 72 726 077 (Dep't of Justice, Executive Office for Immigration Review Jan. 26, 1995). His appeal from this order failed, as did his subsequent petition to reopen his case. *See In re Fasede*, No. A72 726 077 (B.I.A. Feb. 9, 2001), *reh'g denied*, No. A72 726 077 (B.I.A. May 11, 2001). Olajide was not deported to Nigeria until July 26, 2001. Significantly, the terms of this removal order expressly prohibited him from entering or attempting to enter the United States for a period of twenty years from the date of his departure. *See In re Fasede*, Warning to Alien Ordered Removed or Deported, No. A76 124667 (Dep't of Justice, Immigration & Naturalization Serv. Mar. 30, 2001).

Notwithstanding this prohibition, Olajide re-entered the United States illegally in

---

1. Olajide is also known as Folabio Johnson Fasede, and Darren Daniel Peele, among other aliases. (Resp't Ex. 5, Resp't Mot. n. 3.)

June 2002.[2] Once he was found and apprehended here, he was charged in federal court in Michigan with unlawful reentry after having been deported in violation of 8 U.S.C. § 1326(a). In due course, he pled guilty and was sentenced to eight months incarceration to be served in the custody of the Bureau of Prisons ("BOP").

Olajide served this sentence and, on February 3, 2003, BOP released him to the custody of the U.S. Bureau of Immigration and Customs Enforcement ("BICE"), presumably to effect his removal to Nigeria. Four months later on June 16, 2003, the Department of Homeland Security ("DHS"), issued a Determination of Inadmissibility for Olajide under §§ 212(a)(6)(C)(ii) and 212(a)(7)(A)(i)(I) and reinstated the 1995 removal order against him pursuant to 8 U.S.C. § 235(b)(1).

At this point, Olajide begins his string of § 2241 habeas petitions. He filed his first § 2241 habeas petition on September 3, 2003, in the U.S. District Court for the Eastern District of Michigan, Northern Division. In this petition he argued he was being unlawfully detained by the government while awaiting deportation to Nigeria. On January 8, 2004, the court denied his petition as prematurely filed, but also determined that Olajide was lawfully detained because the government showed that there was a significant likelihood that he would be removed from the United States in the foreseeable future. *Olajide v. Wrona*, Action No. 03–10204–BC, 2004 WL 63967 (E.D.Mich. Jan. 8, 2004).

Following the dismissal of his first petition, Olajide filed his second § 2241 petition on March 9, 2004, in the Southern Division for the Eastern District of Michigan, again alleging unlawful detention pending deportation. He sought release from detention under *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), arguing there was "no significant likelihood of [his] removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. This petition also failed, the court ruling that Olajide himself was the cause of the delay in his removal to Nigeria. Specifically, the court held that Olajide's own actions "to thwart his removal at the eleventh hour" created the risk of indefinite detention because he misrepresented to a consular official that he had a case pending and a stay of removal in place. *Olajide v. Wrona*, Action No. 04–73831 (E.D.Mich. Oct. 29, 2004). Thus, the court denied Olajide's petition on October 29, 2004, and he remained in BICE custody pending removal. *Id.*

Thereafter, on November 9, 2004, Olajide filed his third § 2241 petition, this time in the U.S. District Court for the Eastern District of Louisiana. Again, he alleged unlawful detention, citing *Zadvydas*. While this petition was pending, the U.S. District Court for the District of Columbia issued a superseding indictment

---

**2.** Olajide's account of these events differs from respondents'. Olajide alleges he re-entered the United States under a valid visa I–212 Application for Permission to Reapply for Admission, that was approved in 1998, yet he offers no evidence of this other than his own assertion. Respondents, on the other hand, submit that Olajide entered the United States using a photo-substituted fraudulent United States passport bearing the false name "Joseph Romualdo Talotta." Moreover, Olajide admitted to purchasing the fraudulent passport for $4,000.00 while in Johannesburg, South Africa. Although Olajide was charged with two counts of false use of a passport under 18 U.S.C. § 1543 on June 12, 2002, it appears the charges were dismissed in exchange for a guilty plea to one count of reentry of a deported alien under 8 U.S.C. 1326(a). *See United States v. Olajide*, Action No. 2:02cr80487, (E.D.Mich. Jan. 13, 2003).

charging Olajide with making false statements in an August 14, 1998 application for a United States passport. On January 13, 2005, BICE filed a motion to dismiss Olajide's pending habeas petition based on the indictment, which required transferring Olajide from BICE custody to the custody of the United States. Thus, on January 13, 2005, BICE released Olajide into the custody of the United States Marshals and a month later, on February 9, 2005, the Louisiana district court dismissed Olajide's third habeas petition as unopposed. *Olajide v. Ashcroft*, Action No. 04–3072 (E.D.La. Feb. 9, 2005).

On April 19, 2005, Olajide pled guilty in the U.S. District Court for the District of Columbia to passport fraud charges and, on May 6, 2005, that court sentenced him to time served. *United States v. Olajide*, Case No. CR03–344–01 (D.D.C. May 6, 2005). That same day, Olajide was released into BICE custody and subsequently filed this, his fourth, § 2241 habeas petition on June 6, 2005. *Olajide v. BICE*, Action No. 1:05cv626 (E.D. Va. June 6, 2005). While Olajide continues to maintain that he is being unlawfully detained under *Zadvydas* and *Clark*,[3] he now also alleges he is being denied appropriate medical treatment and that BICE officials stole his personal property. Specifically, he claims that he has been denied appropriate medical treatment for (1) a tumor on the right side of his stomach, (2) a broken jaw requiring twenty-four stitches, and (3) a knee-cap replacement recommended by a doctor in Chippewa, Michigan. With respect to his missing personal property, Olajide claims that BICE officials in Michigan stole his three-piece luggage set containing personal items including fifty-six new African dresses and various forms of currency from the United Kingdom (pound sterling), Nigeria (Naira) and the United States (dollars).[4]

Both parties have filed pleadings and responsive materials with respect to Olajide's fourth § 2241 habeas petition, in accordance with the Federal Rules of Civil Procedure and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975). Accordingly this matter is ripe for disposition. For the reasons sated below, the petition must be dismissed.

## II. Ripeness

The threshold issue is ripeness. Respondents argue that because Olajide had not been in BICE custody for more than six months at the time he filed his petition, his claim is not ripe for review. This argument mistakenly focuses on the date the petition was filed rather than the time the petition is adjudicated.

"Ripeness is peculiarly a question of timing" and hence the status of the case at the time the merits are considered must govern the analysis. *See Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (stating that a change in circumstances altered the posture of the case where the "conveyance taking" issues were not ripe at the time the issues were in district court, but were presently ripe before the Supreme Court). As of now, Olajide has been in custody for just over six months, more than the six-month presumptively reasonable period for post-removal order

---

3. In *Clark v. Martinez*, the Supreme Court extended to inadmissible aliens the *Zadvydas* holding that post-removal confinement of admissible aliens is presumptively reasonable for a six-month period. 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005).

4. Olajide does not specify the exact amount of money he claims to have lost. In his instant § 2241 petition, he claims that he filed a claim for $15,000.00 in Louisiana, but explains he asked for less than the property's actual worth.

detention. Accordingly, his petition is now ripe for judicial review.[5]

Under 8 U.S.C. § 1231(a), once an alien is ordered removed, the Attorney General has a ninety-day period or "the removal period" within which to remove the alien. The removal period begins to run on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). According to the record, the U.S. Marshals released Olajide to BICE custody on May 6, 2005, following his criminal confinement for passport fraud. Thus, pursuant to 8 U.S.C. § 1231(a)(1)(B)(iii), Olajide's ninety-day removal period began to run on May 6, 2005.[6] Continued detention during the removal period is not only appropriate under the statute, but indeed required. *See* 8 U.S.C. § 1231(a)(2).[7]

The statute also provides, however, that aliens may be detained beyond the ninety-day removal period. *See* 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Supreme Court interpreted the post-removal provision of § 1231 to include a presumptively reasonable detention period of six months. *See* 533 U.S. at 701, 121 S.Ct. 2491. In reaching this result, the Supreme Court explained that the six-month presumption did not mean that every alien must automatically be released at the end of six

---

**5.** In determining whether an issue is ripe for review, the Supreme Court has directed courts to consider both the fitness of the issue for judicial review and resulting hardship to the parties if the court decides not to review the issue. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *see also Stephenson v. Brady,* 927 F.2d 596, 1991 WL 22835 (4th Cir.1991) (unpublished opinion applying *Abbott Labs.*). Thus to be ripe for review, claims must satisfy both the fitness and the hardship requirements. In this case, the fitness requirement is met because the detention issue presented—the legality of Olajide's continued detention—is a legal question that is unquestionably appropriate for judicial review. The second prong of the test is also met because the hardship of indefinite detention may result if the issue is not resolved. Thus Olajide's petition meets both requirements of the ripeness determination.

**6.** In calculating the number of days Olajide claims he has been unlawfully detained, he argues that he has been in custody since January 14, 2003, the day he pled guilty to unlawful reentry in violation of 8 U.S.C. § 1326(a). In denying Olajide's first habeas petition, the district court in Michigan explained that the post-removal detention period began to run once the removal order became administra-

tively final, or on June 16, 2003, when the immigration officer determined Olajide was ineligible for admission to the United States, and not from the date of Olajide's guilty plea. *See Olajide v. Wrona,* Action No. 03–10201–BC, 2004 WL 63967(E.D.Mich. Jan. 8, 2004); *see also* Resp't Ex. 7. While in BICE custody, Olajide filed a number of habeas petitions alleging unlawful detention, but in January 2005, while his third federal habeas petition was pending in Louisiana, he was released from BICE custody and transferred to the custody of the U.S. Marshal pending trial for passport fraud. At this point, Olajide was no longer in BICE custody and thus not subject to 8 U.S.C. § 1231. Olajide returned to BICE custody after his release by the U.S. Marshal on May 6, 2005, at which point the post-removal period started anew for the purposes of 8 U.S.C. § 1231(a)(1)(B)(iii).

**7.** "During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." *Id.*

months; rather, the Supreme Court made clear that confinement may continue beyond the six-month period until "it has been determined that there is *no* significant likelihood of removal in the reasonably foreseeable future." *Id.* Later, in *Clark,* the Supreme Court held that § 1231(a)(6) also applies to inadmissible aliens, like Olajide, and by extension so does the six-month presumptively reasonable period of detention.

In this case, the ninety-day removal period began to run on May 6, 2005, when the U.S. Marshals released Olajide from punitive confinement into BICE custody. *See* 8 U.S.C. § 1231(a)(1)(B)(iii). Approximately one month later, on June 6, 2005, Olajide filed the instant petition alleging unlawful detention. At the time Olajide filed this fourth petition, he was well within the ninety-day removal period of 8 U.S.C. § 1231(a), and thus his petition was premature. Yet at this time, Olajide has now been detained just over six months, and therefore his petition is ripe for judicial review.

### III.

■ Under *Zadvydas* an alien confined while awaiting removal cannot obtain *habeas* relief from confinement unless he meets a two prong standard. First, the alien must show (1) he is being held beyond the presumptively reasonable six-month period and (2) that there is *no* significant likelihood of removal in the foreseeable future. *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491. If the alien makes these *prima facie* showings, the burden then shifts to the government to provide evidence to rebut them. *Id.*

■ While Olajide has satisfied the first prong of the standard, he falls far short with respect to the second prong; he has proffered no good reason to believe his claim that there is no likelihood of removal in the foreseeable future through no fault of his own. To the contrary, the record clearly reflects that Olajide himself is the author of any delay in his removal.

To support his claim of indefinite detention, Olajide asserts that the Nigerian Embassy will not issue the appropriate travel documents. Yet, Olajide fails to mention that his obduracy is the reason the Nigerian Embassy will not issue the necessary documents. The record reflects that Olajide was scheduled to leave the United States on August 31, 2005, but was not deported as scheduled because prior to his departure, he notified the Nigerian Embassy that he did not wish to leave the United States until he received dental surgery for his broken jaw.[8] On June 20, 2005, while in DHS custody, the Hampton Regional Jail dentist evaluated Olajide and recommended surgery by a specialist. The government made arrangements to schedule and pay for the recommended dental surgery by a specialist. Olajide, however, refused the treatment because he did not want the specialist to perform the surgery, demanding instead that the general facility dentist perform the recommended surgery. The jail dentist understandably declined to do so inasmuch as the surgery required expertise beyond his training. Even so, Olajide informed the Nigerian Embassy that he would not return to Nigeria until a dentist of his choosing performs the necessary surgery for the injury to his jaw. As a result, the Embassy decided not to issue the travel documents until after Olajide received dental surgery. Respondents *maintain* that Olajide has refused and continues to refuse to accept the dental surgery and treatment

---

**8.** Olajide sustained this injury to his jaw in January 2005, while incarcerated in Louisiana, during a physical altercation with another inmate.

they have offered. According to Deportation Supervisor Francis Monin, "should Mr. Olajide acquiesce to treatment, the necessary travel documents could be obtained from the Nigerian Embassy in approximately three weeks." *See* Resp't Report Ex. 1.

It is, of course, pellucidly clear that Olajide has no right to treatment by any specific dentist or doctor. And it is equally clear that his refusal to accept the free care and surgery by an appropriate specialist is merely another of his ploys to avoid removal to his native country. Simply put, Olajide's continued detention is not a result of circumstances beyond his control; the risk of indefinite detention is the result of his own actions and not those of the respondents. Once he agrees to accept the government's offer of free surgical treatment by the specialist, the Nigerian Embassy will issue the appropriate travel documents necessary for Olajide's removal. Thus Olajide cannot show there is good reason to believe he will be held indefinitely in violation of *Zadvydas* if his obdurate actions are the reason for his continued detention. This result finds firm support in 8 U.S.C. § 1231(a)(1)(C), which provides that an alien may remain in detention beyond the ninety-day removal period "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *see also Pelich v. INS*, 329 F.3d 1057 (9th Cir.2003) (holding that an alien is not entitled to habeas relief when "his indefinite detention is due to his failure to cooperate with the INS's efforts to remove him").

In sum, the delay in Olajide's removal, and thus his continued confinement pending removal, are the direct result of his unreasonable refusal to accept free and appropriate dental and surgical treatment by a specialist. He has no right to demand that a specific dentist perform the surgery. His claim to the contrary is a transparent ploy to thwart his removal. This is particularly apparent given that the dentist Olajide insists upon sensibly declines to do the surgery because it requires expertise outside his area of competency. Once these facts are well understood by the appropriate officials of the Nigerian Embassy, they will presumably act promptly to issue the travel documents to Olajide in the event he persists in his refusal to accept the proffered, appropriate and free dental and surgical care.

Thus Olajide should be given the choice once again to submit to the surgery and treatment by the specialist prior to removal and if he continues to decline, the Nigerian Embassy will presumably issue travel documents promptly so that he may be removed from this country to Nigeria. In the event he finally elects to accept the proffered, free and appropriate surgical and dental care, the Nigerian Embassy will presumably issue travel documents to him promptly upon the completion of the treatment. In the meantime, and throughout any surgical or dental treatment provided to him, Olajide must remain confined pending his removal, as the record reflects not only that he is the cause of any delay in his removal, but that he has failed, moreover, to show that there is "no significant likelihood of removal in the foreseeable future." *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491.

## IV.

■ In his habeas petition, Olajide also alleges claims for inadequate medical care relating to his jaw, his knee (he claims to need his knee-cap replaced), and his recently-developed tumor. In addition to his

medical claims, Olajide alleges BICE officials have stolen some of his personal property including his money and luggage carrying African dresses. These are tort claims, which if properly exhausted, may be asserted, if at all, pursuant to 42 U.S.C. § 1983.[9] Olajide cannot maintain these claims in the instant habeas petition, therefore they must be dismissed for lack of jurisdiction.

This conclusion follows from the settled rules that *habeas corpus* relief is appropriate only when a prisoner attacks the fact or duration of confinement, see *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); whereas, challenges to the conditions of confinement that would not result in a definite reduction in the length of confinement are properly brought under 42 U.S.C. § 1983. *See Strader v. Troy,* 571 F.2d 1263, 1269 (4th Cir.1978). Accordingly, for the reasons stated here, Olajide's habeas petition under § 2241 must be dismissed. An appropriate Order will issue.