Remilkun Kayode DAVIS, Petitioner,

v.

Alberto GONZALES, United States
Attorney General, et al.,
Respondents.

No. EP 06–CA–00108–KC.

United States District Court,
W.D. Texas,
El Paso Division.

Aug. 25, 2006.

Edgar H. Holguin, Public Defenders Office, El Paso, TX, for Petitioner.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for Respondents.

## ORDER

CARDONE, District Judge.

On this day, the Court considered Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment ("Motion"). For the reasons set forth herein, Respondents' Motion is **DENIED.**

## I. BACKGROUND

Remilkun Kayode Davis ("Petitioner") failed to include a background section in his response to Respondents' Motion. Accordingly, the following background section is taken from Respondents' Motion.

Petitioner served on active duty in the United States Army and was then honorably discharged in August 2004. Resp't's Mot. 1. After his discharge, he was commissioned as a second lieutenant in the Army Reserves. *Id.* In order to enlist, Petitioner claimed that he had been born in the United States Virgin Islands and based this claim on a purported United States V.I. birth certificate that named a hospital in St. Croix which had never existed. *Id.*

On May 30, 2003, Petitioner was convicted of "False statement in application and use of passport" pursuant to 18 U.S.C. § 1542. *Id.* at 2. This false statement was coupled with the submission of an altered Missouri birth certificate. *Id.* Thereafter, on February 1, 2005, Petitioner was convicted of "False claim to citizenship" pursuant to 18 U.S.C. § 911 and "False declaration before grand jury or court" pursuant to 18 U.S.C. § 1623. *Id.*

On March 9, 2005, the Department of Homeland Security (DHS) placed Petitioner in removal proceedings, alleging that he was a native and citizen of Nigeria, present in the United States without having been admitted or paroled and having made a false claim to citizenship. *Id.* During the removal proceedings, Petitioner attempted to naturalize based on his service in the Army during a time of conflict. *Id.* United States Citizenship and Immigration Services ("CIS") denied Petitioner's naturalization application in May 2005. *Id.* CIS found that Petitioner's conviction for "false declaration before grand jury or court" to be a crime involving moral turpitude, and consequently found that Petitioner was unable to meet the good moral character requirement for naturalization.[1] *Id.*

On June 16, 2005 and with counsel, Petitioner conceded removability before Immigration Judge ("IJ") William Lee Abbott. *Id.* IJ Abbott entered an order removing Petitioner from the United States to Nigeria. *Id.* Petitioner waived appeal of the removal order, and it became final on June 16, 2005. *Id.*

In or about August 2005, Petitioner submitted a custody review packet in which he

---

1. At some point in these proceedings, DHS also found Petitioner inadmissible for having been convicted of a crime involving moral turpitude. Resp't's Mot. 2.

claims that he believes he was born in Nigeria. *Id.* at 3. The packet included a formal request for travel documents to Nigeria. *Id.* After receiving this request, Immigration and Customs Enforcement (ICE) served Petitioner with a Form I-229(a), informing Petitioner of his obligation to assist in securing travel documents and detailing actions Petitioner needed to take in order to comply with his obligation. *Id.*

Subsequently, Petitioner filed multiple requests for release from detention with ICE authorities. *Id.* ICE, through its Field Operations Director Robert E. Jolicoeur, denied these requests. *Id.* The alleged basis for this denial was two-fold. *Id.* First, ICE alleges that Petitioner failed to comply with his obligation to assist in securing travel documents by failing to make timely and good faith efforts to obtain travel documents, effectively preventing his removal from the United States. *Id.* Second, ICE alleges that Petitioner presents a flight risk based upon his varying false claims to birth. *Id.* In March 2006, ICE served Petitioner with notice of failure to comply with efforts to aid in removal. *Id.*

On March 13, 2006, Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On March 27, 2006, this Court issued an order to show cause as to why relief should not be granted. In response, Respondents submitted a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, which is now before this Court. On August 23, 2006, this Court held an evidentiary hearing, allowing both sides to provide additional testimony and evidence to support their positions.

## II.  DISCUSSION

### A.  Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true, and view them in a light most favorable to the plaintiff. *Id.; Calhoun v. Hargrove,* 312 F.3d 730, 733 (5th Cir.2002). A court will dismiss a complaint pursuant to Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *S. Christian Leadership Conference v. Supreme Court of Louisiana,* 252 F.3d 781, 786 (5th Cir.2001).

A summary judgment movant, by contrast, must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106

S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Motion to Dismiss

■ Relying on the United States Supreme Court's decision in *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004), Respondents argue that Robert Jolicouer is the only proper Respondent in the instant suit because he is Petitioner's custodian. Resp't's Mot 4. Petitioner, while recognizing that Respondent filed a motion to dismiss, appears to have mistaken the motion as a motion to dismiss the entirety of the suit, rather than most of the Respondents. Pet'r's Resp. to Resp't's Mot. 2. Consequently, Petitioner failed to respond to Respondents' substantive argument regarding the proper parties to this suit.

■ In habeas challenges to present physical confinement or "core challenges," the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other supervisory official. *Padilla*, 542 U.S. at 435, 124 S.Ct. 2711. For example, in *Padilla*, the Supreme Court held that the warden of the military brig holding Padilla, an alleged enemy combatant, was the proper respondent, rather than Secretary of Defense Donald Rumsfeld. *Id.* at 435–36, 124 S.Ct. 2711. However, in this same opinion, the Supreme Court specifically "left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deporta-

tion." *Id.* at 436 n. 8, 124 S.Ct. 2711. In fact, the Supreme Court noted a circuit court split with respect to this very issue— a split on which the Fifth Circuit has not yet taken a position. *Id.*

In similar cases where the relevant circuit court of appeals has not yet decided the range of appropriate respondents to a removable alien's petition for writ of habeas corpus, district courts have refused to decide the matter in the first instance when the Government responds on the merits. *See, e.g. Gnokane v. Ashcroft*, 2005 WL 1006355, **8–9, 2005 U.S. Dist. LEXIS 7561, at *24–25 (D.Pa. Apr. 28, 2005); *Pham v. United States Immigration Servs.*, 2005 WL 2104460, **1–2, 2005 U.S. Dist. LEXIS 37237, at *4–5 (D.Or. Aug. 25, 2005); *Arriola–Arenas v. Ashcroft*, 2004 WL 2517924, **1–2, 2004 U.S. Dist. LEXIS 22517, at *4–5 (E.D.Pa. Nov. 8, 2004). Moreover, the instant case is distinguishable from *Padilla* because it involves an alien detained pending removal, rather than a United States citizen and alleged enemy combatant detained in military custody pending a determination of whether or not his detention violates the United States Constitution. *Compare Davis v. Gonzales, et al.*, No. 06–CV–108–KC (filed Mar. 13, 2006), *with Padilla*, 542 U.S. at 426, 124 S.Ct. 2711. In light of the current state of the law, Respondents cannot rely on *Padilla* to support their argument that Jolicouer is the only proper Respondent in the instant suit. In addition, as Respondents have addressed the merits, this Court declines to address the matter in the first instance, especially in light of the briefing on this issue submitted by both parties.

Accordingly, Respondents' Motion to Dismiss is **DENIED** without prejudice to refiling within fifteen (15) days from the issuance of this order. However, should Respondents choose to refile their Motion

to Dismiss regarding this matter, the Court directs Respondents to brief the issue in full, discussing not only the applicability of *Padilla* to this suit, if any, but also the current state of the circuit court split.

## C. Motion for Summary Judgment

■ Respondents argue that they are entitled to detain petitioner longer than the statutory ninety (90) day removal period because he has only made halfhearted efforts to cooperate with the Government in securing travel documents. Resp't's Mot. 6. Specifically, Respondents argue that immigration officials advised Petitioner that to secure travel documents, he would need to produce his passport, birth certificate, and the names and addresses of family and friends in the United States and Nigeria. *Id.* Petitioner was also allegedly instructed that answers such as "I don't know" and "not sure" are insufficient. *Id.* Respondent further argues that, even if this Court finds that Petitioner has cooperated in good faith to secure travel documents, he has not satisfied his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future because he makes only conclusory allegations that Nigeria will not accept him and has failed to demonstrate how either his own circumstances or a particular barrier to repatriation are such as make removal unlikely. Resp't's Mot. 5.

Petitioner first responds by arguing that he has made a good faith effort to comply with the Government in securing travel documents. Pet't'rs Resp. 3. Shortly after receiving his final order of removal to Nigeria, he sent a formal request to the Nigerian Embassy in Washington, D.C. for travel documents and thereafter continued to have conversations with both United States and Nigerian immigration officials regarding the facilitation of his removal. *Id.* at 3. Petitioner also argues that he has

never denied his Nigerian nationality, in contrast to the cases cited by Respondents in support of their position, but rather possesses only limited information about his past and so cannot produce the requested information. *Id.* at 4–5. Petitioner further argues that, assuming the Court finds that he has made a good faith effort to aid the Government in securing travel documents, he has met his burden in showing a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 3–5. He argues that the lack of progress in obtaining his removal to Nigeria, the Government's inability to provide him with an estimate as to when he will be removed, and his inability to obtain travel documents to Nigeria are sufficient to meet his burden of showing a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.*

After an IJ enters a final order of removal, the post-removal statute, codified at 8 U.S.C. § 1231, allows the Government to detain aliens pending actual removal. 8 U.S.C. § 1231(a); *Zadvydas v. Davis*, 533 U.S. 678, 682–83, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *Shokeh v. Thompson*, 369 F.3d 865, 869 (5th Cir.2004). Generally, the Government must facilitate removal within a ninety (90) day removal period following entry of the final order of removal. 8 U.S.C. § 1231(a); *Abdulle v. Gonzales*, 422 F.Supp.2d 774, 777 (W.D.Tex. 2006). An exception to this 90–day removal period exists, allowing the Government to detain the alien beyond the removal period, when "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *Abdulle*, 422 F.Supp.2d at 777. This exception exists because "[w]e

cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491 … until the alien makes a full and honest effort to secure travel documents." *Lema v. I.N.S.,* 341 F.3d 853, 857 (9th Cir.2003).

■ Assuming that an alien meets the good faith requirement imposed by § 1231, habeas courts must then examine the length of the alien's detention. When presented with issue of whether aliens that the Government is unable to remove are condemned to face an indefinite term of detention in *Zadvydas v. Davis,* the Supreme Court held that " 'once removal is no longer reasonably foreseeable, continued detention is no longer authorized by 8 U.S.C. § 1231.' " *Shokeh,* 369 F.3d at 869 (citing *Zadvydas,* 533 U.S. at 699, 121 S.Ct. 2491). To aid habeas courts in determining what constitutes the reasonably foreseeable future, the Supreme Court held that six months is a presumptively reasonable period of detention. *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491. Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." [2] *Id.* For detention to remain reasonable, what counts as the "reasonably foreseeable future" must shrink as the period of detention increases. *Id.*

■ No court has addressed the quantum of evidence necessary to establish lack of cooperation under § 1231. *Abdel–Muhti v. Ashcroft,* 314 F.Supp.2d 418, 428 (M.D.Pa.2004). Nonetheless, when faced

with the issue of determining whether petitioners have satisfied their obligations under § 1231, courts look to whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the country of intended removal's consulate, and/or whether they can or have provided the INS with requested documents. *Lema v. I.N.S.,* 341 F.3d at 857 (finding petitioner failed to cooperate because he provided no affidavits, made no requests for travel documents, did not contact the consulate, and failed to produce documents to INS); *Olajide v. B.I.C.E.,* 402 F.Supp.2d 688, 693 (E.D.Va.2005) (denying habeas relief when petitioner obstructed efforts at removal by refusing medical treatment); *Arjam v. Ashcroft,* 2006 WL 2241588, \*\*2–3, 2006 U.S. Dist. LEXIS 54229, at \*7 (D.N.J. Aug. 4, 2006) (denying habeas relief when petitioner confused the issue of his identity and failed to ask nearby family members to assist him in establishing his identity); *Jabir v. Ashcroft,* 2004 WL 60318, \*8, 2004 U.S. Dist. LEXIS 346, at \*31 (E.D. Jan. 8, 2004) (granting habeas relief when Government failed to produce evidence that receiving country would enable removal and that petitioner had obstructed attempts at removal). Courts are careful to note that the Government bears some burden for articulating the information required from petitioners and for focusing efforts on obtaining appropriate documentation to expedite re-

---

**2.** The Government argues that, "[a]n alien has the burden of establishing that there is no significant likelihood of removal in the reasonably foreseeable future," citing *Idowu v. Ridge,* 2003 WL 21805198, \*\*1–2, 2003 U.S. Dist. LEXIS 13503, at \*4 (N.D.Tex. Aug. 4, 2003). However, it is clear from *Zadvydas* and *Idowu* that the alien need only provide

"good reason" to believe there is no significant likelihood of removal in the reasonably foreseeable future, at which point the burden shifts to the Government to rebut this presumption. *Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491; *Idowu,* 2003 WL 21805198, \*4, 2003 U.S. Dist. LEXIS 13503, at \*11.

moval. *Qing Di Wang v. Ashcroft*, 2006 WL 1540896, *4, 2006 U.S. Dist. LEXIS 34920, at *13 (D.N.J. May 31, 2006).

In the instant case, although there is no evidence that Petitioner has taken any specific overt action to thwart removal, see, e.g. *Olajide v. B.I.C.E.*, 402 F.Supp.2d at 693, there is ample evidence indicating that he has not exhausted readily available resources in making a good faith effort to effectuate his removal. At oral argument, Respondents presented evidence that Petitioner knows at least five people in the United States who possess some knowledge of his past. In a Record of Sworn Statement dated July 8, 2003, Petitioner's ex-girlfriend declared that while she lived with Petitioner, he received letters, postcards, and pictures from his mother who resided in Nigeria. Petitioner's ex-girlfriend also indicated that Petitioner has a brother and sister who live in New York, and she was able to provide their names and addresses. Finally, Petitioner's ex-girlfriend indicated that Petitioner has an aunt and uncle who live in Missouri, and that they know details about Petitioner's country of origin.

Nonetheless, Petitioner has not made an effort to have any of these people contact the Government, sign affidavits attesting to his nationality, and/or provide the Government with information concerning his nationality or proving his identity. When given an opportunity to present evidence at the evidentiary hearing, Petitioner similarly did not call these people as witnesses or present any evidence beyond his single request for travel documents to show that he has made an ongoing effort with the Nigerian consulate to secure his removal.

Moreover, in his formal request for travel documents, Petitioner answered many questions with "unknown" making it virtually impossible for the Government to verify his background and effectuate removal. While certain circumstances might excuse such response, Petitioner did not provide this Court with any reasons whatsoever as to why he answered "unknown." Accordingly, this Court cannot find that Petitioner has cooperated in good faith as that term is defined in § 1231.

Since this Court finds that Petitioner has not met the initial showing of good faith cooperation, it does not reach the issue of whether there is a significant likelihood of removal in the reasonably foreseeable future.

## III. CONCLUSION

Respondent's Motion to Dismiss (Doc. No. 5) is **DENIED** without prejudice to refiling in accordance with this Court's instructions within fifteen (15) days from the issuance of this order.

Although Petitioner has not yet provided this Court with sufficient evidence to prove that he has made a good faith effort to aid the Government in securing travel documents, he still has ample opportunity to do so. Moreover, as the length of Petitioner's confinement grows, so must the amount of evidence the Government presents to support a finding of non-cooperation.[3] *Abdel–Muhti v. Ashcroft*, 314 F.Supp.2d 418, 430 (M.D.Pa.2004). Accordingly, this Court will retain jurisdiction over this matter and **ORDER** Respondents to **SHOW CAUSE** by no later than *October 24, 2006* as to why the petition should not be granted. During this time, Respondents are instructed to investigate all of the information that Petitioner has provided them to date and all additional information he may provide, and further keep a detailed log of all of efforts to secure his removal. Ac-

---

**3.** "A possibility of removal at some future inestimatable time for someone who has been in custody for almost two years will not suf-fice [to satisfy constitutional requirements]." *Abdel–Muhti*, 314 F.Supp.2d at 426.

cordingly, Respondents' Motion (Doc. No. 5) is **DENIED.**

**SO ORDERED.**