**Ali M. ABDULLE, Petitioner,**

v.

**Alberto GONZALES, Attorney General, et al., Respondents.**

**No. EP–05–259–DB.**

United States District Court,
W.D. Texas,
El Paso Division.

March 28, 2006.

Ali M. Abdulle, El Paso, TX, Pro se.

David H. Burke, U.S. Attorney's Office, Jose J. Tavarez, Special Assistant U.S. Attorney, Immigration And Naturalization Services, Magdalena G. Jara, Assistant U.S. Attorney, El Paso, TX, David H. Burke, for Respondents.

### *MEMORANDUM OPINION ORDER*

BRIONES, District Judge.

On this day, the Court considered Respondents' "Motion To Dismiss," filed in the above-captioned cause on August 1, 2005. On September 7, 2005, Petitioner

Ali M. Abdulle filed a Response, which he supplemented with "Supporting Case Law" on October 20, 2005. On February 23, 2006, Petitioner filed a Supplemental Response.[1] Respondents, in turn, filed a "Memorandum Of Points And Authorities" ("Reply") on March 2, 2006. On March 13, 2006, Petitioner filed a "Response To Respondent's [sic] Memorandum Of Points And Authorities Filed on March 1, 2006 [sic]." After due consideration, the Court is of the opinion that Respondents' Motion should be denied, and that, on or before April 28, 2006, Respondents should show cause why the relief Petitioner seeks should not be granted.

## BACKGROUND

Petitioner is a native and citizen of Somalia, who was admitted to the United States on or about November 1986. As a result of several criminal convictions, as well as for overstaying the time permitted by his non-immigrant visa, Petitioner was detained and placed into removal proceedings on May 24, 2004.[2] On June 3, 2004, an Immigration Judge ordered Petitioner removed from the United States. Petitioner waived his right to appeal his removal order. Petitioner remains in Respondents' custody.

On January 17, 2003, the Western District of Washington entered an Order certifying a nationwide class action[3] and issued an injunction which precluded the Immigration and Naturalization Service[4] from removing individuals to Somalia. *Ali v. Ashcroft*, 213 F.R.D. 390, 395 (W.D.Wash.2003). The *Ali* court held that a foreign government's consent was required before individuals could be removed to that foreign country. *Id.* at 401–05. Specifically, the *Ali* court found that because Somalia has no functioning central government which could accept deportees, INS could not remove individuals to Somalia. *See id.* On appeal, the Ninth Circuit upheld the injunction. *Ali v. Ashcroft*, 346 F.3d 873, 876 (9th Cir.2003). Subsequently, in *Jama v. Immigration and Customs Enforcement*, the Supreme Court held that Somalia's inability to consent in advance to an alien's removal did not preclude the alien's removal to Somalia as his country of birth. 543 U.S. 335, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005). Thereafter, the Ninth Circuit withdrew its *Ali* opinion and remanded the cause to the district court. 421 F.3d 795 (9th Cir.2005). The *Ali* injunction remains intact.

Abdulle filed a "Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2241" on July 7, 2005. On July 14, 2005, the Court entered an Order requiring Respondents to show cause why the Petition

---

1. On January 26, 2006, Petitioner filed a "Motion For Appointment Of Counsel Pursuant To 28 U.S.C. § 2241," which the Court granted on February 2, 2006.

2. On June 12, 1989, Petitioner was convicted of aggravated assault on a police officer. On April 20, 1993, he was convicted of cocaine possession. Petitioner was also convicted of assault, on June 29, 2001.

3. The class was defined by the *Ali* Court as "[a]ll persons in the United States who are subject to orders of removal, expedited removal, deportation or exclusion to Somalia that are either final or that one or more of the

Respondents believe to be final, excluding persons with a habeas petition pending, or on appeal, raising the issue of unlawful removal to Somalia under 8 U.S.C. § 1231(b)." *Ali*, 213 F.R.D. at 395.

4. As of March 1, 2003, the former Immigration and Naturalization Service ("INS") was abolished and its functions and units incorporated into the Department of Homeland Security. Within the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") is charged with INS's detention and removal functions. Where necessary, the Court refers to ICE, unless citing to materials which refer to the INS.

should not be granted. The instant Motion followed.

## STANDARD

Rule 12(b)(6) allows dismissal of a case when the plaintiff fails to state a claim upon which relief can be granted.[5] FED.R.CIV.P. 12(b)(6). Under Rule 12(b)(6), a court must decide whether the facts alleged, if true, would entitle the plaintiff to some legal remedy. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 351 (5th Cir. 1989). Dismissal for failure to state a claim is highly disfavored and is not granted routinely because of the liberal "notice pleading" requirements of the Federal Rules. FED.R.CIV.P. 8(a); *Shipp v. McMahon*, 199 F.3d 256, 260 (5th Cir.2000). In short, a court should not dismiss a claim under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80.

## DISCUSSION

■ As an initial matter, the Court pauses to address its jurisdiction to entertain Abdulle's Petition. It first notes that the Real ID Act stripped district courts of jurisdiction over 28 U.S.C. § 2241 petitions attacking removal orders.[6] *See Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 735–36 (5th Cir. 2005). Nonetheless, the Real ID Act left intact a district court's ability to adjudicate an alien's claim regarding the constitutionality of his continued detention. *See, e.g., Gul v. Rozos*, 163 Fed.Appx. 317, 2006 WL 140540 at *1 (5th Cir.2006). Thus, because

Petitioner challenges his continued detention, rather the validity of his removal order, the Court is fully empowered to consider his claim, as well as Respondents' instant Motion. *See id.*

Through their Motion, Respondents request that the Court dismiss Abdulle's Petition for failure to state a claim upon which relief may be granted. Respondents assert that Petitioner's continued detention is constitutionally permissible because "there is a significant likelihood that Abdulle can be removed in the foreseeable future." Alternatively, through their Reply, Respondents argue that the *Ali* injunction tolls the removal period, such that Petitioner's continued detention remains constitutional. The Court begins by examining Respondents' suggestion that the removal period has not begun to run, before addressing whether Petitioner's removal is significantly likely in the foreseeable future. Ultimately, the Court finds both of Respondents' arguments unpersuasive. Further, the Court concludes that the facts alleged in Abdulle's Petition, if true, would entitle him to some legal remedy, and thus denies Respondents' Motion. *See Xerox Corp.*, 888 F.2d at 351.

### I. *Beginning of Removal Period*

■ When a final order of removal has been entered against an alien, the Government must facilitate that alien's removal within a 90–day "removal period." *See* 8 U.S.C.A. § 1231(a)(1) (West 1999). That removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if

---

5. Respondents fail to state the authority pursuant to which they seek dismissal. Because the Federal Rules of Civil Procedure apply to habeas corpus petitions, FED.R.CIV.P. 81(a)(2), the Court presumes they seek the requested relief under Rule 12(b)(6).

6. The REAL ID Act is part of the much broader Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Pub.L. No. 109–13, 119 Stat. 231 (May 11, 2005).

a court orders a stay of the removal of the alien, the date of the court's final order; (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. *Id.* at §§ 1231(b)(i)-(iii). Here, Respondents argue that, pursuant to § 1231(b)(ii), Petitioner's removal period has not begun to run because the *Ali* injunction orders a stay of Petitioner's removal, and that the removal period will not begin until the *Ali* injunction is lifted.

Respondents' argument misses the mark. Section 1231(b)(ii), by its very language, applies only when a court reviews the propriety of an alien's removal order and stays that alien's removal. *Id.* at § 1231(b)(ii). That is not the case here. Petitioner never requested judicial review of his removal order, as evidenced by his waived appellate rights. Similarly, the Western District of Washington reviewed whether the Government could remove aliens to Somalia, but did not examine, nor stay, any alien's removal order. *See Ali,* 213 F.R.D. at 395. Indeed, the *Ali* court engaged in a lengthy analysis explaining that its jurisdiction over the cause was premised on the very fact that it was not reviewing any immigration judge's determinations of removability. *Id.* at 398–400. Rather, the Ali injunction applies only to aliens "subject to orders of removal, expedited removal, deportation or exclusion to Somalia that are either final or that one or more of the Respondents believe to be final...." *Id.* at 395. Thus, if Petitioner's removal order was not final or perceived to be final, he would not be considered part of the class certified by the Western District of Washington. *See id.* For all of these reasons, the beginning of Petitioner's removal period is not governed by

§ 1231(b)(ii). Instead, because Petitioner waived his right to appeal, Petitioner's removal order became final the day it was entered, June 3, 2004. *See* 8 C.F.R. § 1241.1(b).

Having determined that Petitioner's removal period began to run on June 3, 2004, the Court turns to assessing Respondents' contention that Petitioner has failed to state a claim because his continued detention is constitutionally permissible.

## II. Continued Detention Beyond the Removal Period

During an alien's removal period, the Government must detain the alien until he or she is actually removed. *See* 8 U.S.C.A. § 1231(a)(2). In situations where removal cannot be accomplished within 90 days,[7] detention beyond the removal period is authorized by § 1231(a)(6), which provides:

> An alien ordered removed who is ... removable ... [for committing a criminal offense] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* at § 1231(a)(6).

■ The Government's ability to detain an alien pursuant to § 1231(a)(6), however, is not unlimited. In *Zadvydas v. Davis,* the Supreme Court held that in order to avoid a "serious constitutional threat," § 1231(a)(6) must be construed as limiting an alien's post-removal-period detention to the period reasonably necessary to remove the alien from the United States. 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d

---

7. An exception to the 90–day requirement is provided for when an alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal. 8 U.S.C.A. § 1231(a)(1)(C). Neither Party contends such is the case here.

653 (2001); *see also Clark v. Martinez*, 543 U.S. 371, 384, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (reiterating that, under *Zadvydas*, § 1231(a)(6) authorizes detention not until the detention approaches constitutional limits, but only for a period consistent with the purpose of effectuating removal). The Court determined that a presumptively reasonable period of post-removal detention is limited to six months. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491, 150 L.Ed.2d 653. If, after six months, an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing. *Id.* There is no fixed time which constitutes the "reasonably foreseeable future;" but, as the period of prior post-removal-period confinement grows, the amount of time considered the "reasonably foreseeable future" shrinks. *Id.* Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by § 1231(a)(6) and the alien must be released, subject, of course, to appropriate conditions. *Id.* at 699–700, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653.

Through their instant Motion, Respondents pray the Court dismiss Abdulle's Petition on the ground that he has failed to state a claim upon which relief can be granted because Petitioner's removal is likely in the reasonably foreseeable future. Respondents insist that Petitioner's removal has not yet been effectuated because the *Ali* injunction prohibits them from removing Petitioner to Somalia. *See Ali*, 213 F.R.D. at 395. Respondents contend that because the *Jama* Court, 543 U.S. 335, 125 S.Ct. 694, 160 L.Ed.2d 708, essentially rejected the premise of the *Ali* injunction—that ICE may not remove aliens to Somalia so long as no central government exists to accept them—it is reasonably foreseeable that the *Ali* injunc-tion will soon be vacated, and Petitioner removed to Somalia. The Court disagrees.

Petitioner's removal order became administratively final, and his removal period began, on June 3, 2004. ICE then had 90 days in which to facilitate Petitioner's removal. *See* 8 U.S.C.A. § 1231(a)(1). Petitioner's removal period ended on the August 27, 2004. Because Petitioner's removal was predicated on his criminal convictions, § 1231(a)(6) authorized his continued detention. *See id.* at § 1231(a)(6). Petitioner's post-removal detention was presumptively reasonable for six months, until February 27, 2005. *See Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491, 150 L.Ed.2d 653. However, since Petitioner has been in custody for more than six months, in order to state a colorable claim he need but provide a good reason to believe that there is no significant likelihood he will be removed in the reasonably foreseeable future. *Id.* While there is no fixed time which constitutes the "reasonably foreseeable future," as the period of prior post-removal-period confinement grows, the amount of time considered the "reasonably foreseeable future" shrinks. *Id.*

Abdulle asserts through his Petition that because the *Ali* injunction precludes his removal to Somalia, his removal will not likely be effectuated in the reasonably foreseeable future. Because the *Ali* injunction imposes no restrictions on Respondents' ability to remove Petitioner to another country, *see Ali*, 213 F.R.D. at 395, by itself, the *Ali* injunction might be insufficient reason to believe that ICE would not effectuate Petitioner's removal in the reasonably foreseeable future. Nonetheless, it is worth noting that, to date, Petitioner's post-removal detention has exceeded one year. Because Petitioner's post-removal detention has been of such duration, the amount of time consid-

ered the "reasonably foreseeable future" has shrunk dramatically. *See Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491, 150 L.Ed.2d 653. Further, while Respondents would have the Court blindly accept their assertion that the *Ali* injunction will soon be vacated, it has been over a year since *Jama* was decided, *see Jama,* 543. U.S. 335, 125 S.Ct. 694, 160 L.Ed.2d 708, over six months since the opinion affirming the *Ali* injunction was withdrawn, *see Ali,* 421 F.3d 795, and yet the *Ali* injunction remains intact. Thus, the Court finds that by pleading the length of his prior post-removal detention and the obstacle the *Ali* injunction poses, Petitioner has pled a good reason to believe that Respondents will not effectuate his removal within the reasonably foreseeable future. *See Zadvydas,* 533 U.S. at 701, 121 S.Ct. 2491, 150 L.Ed.2d 653.

As a result, Abdulle's Petition states a claim upon which relief can be granted, and the Court must deny Respondents' Motion. *See Xerox Corp.,* 888 F.2d at 351.

Alternatively, through their Reply, Respondents argue that because Petitioner has failed to allege that his detention is attributable to the Government's actions or inaction, he fails to state a claim upon which relief can be granted. The Court flatly rejects Respondents' invitation to impose this extra condition on petitioners seeking relief under *Zadvydas.* The *Zadvydas* Court imposed no such requirement. *See Zadvydas,* 533 U.S. at 699–701, 121 S.Ct. 2491, 150 L.Ed.2d 653. Indeed, Respondents' instant argument is remarkably similar to the contention that continued detention be lawful so long as good faith efforts to effectuate detention continue, a rationale the *Zadvydas* Court expressly rejected. *Id.* at 702, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653. This Court will not second guess the Supreme Court.

## CONCLUSION

As explained above, the Court rejects Respondents' assertion that the *Ali* injunction served to toll the beginning of Petitioner's removal period. Further, the Court concludes that Abdulle has sufficiently pled a good reason to believe that Respondents will not effectuate his removal in the reasonably foreseeable future. As a result, Abdulle's Petition states a colorable claim, and Respondents' instant Motion must be denied. Consequently, pursuant to *Zadvydas,* it is Respondents' burden to rebut Petitioner's showing. Finally, it is the Court's opinion that, on or before April 28, 2006, Respondents show cause why Abdulle's Petition should not granted.

**IT IS HEREBY ORDERED** that Respondents' "Motion To Dismiss" is **DENIED.**

**IT IS FURTHER ORDERED** that on or before April 28, 2006, Respondents **SHOW CAUSE** why the relief Petitioner seeks should not be granted.