Nantu KHAN, Petitioner,

v.

Alberto GONZALES, United States Attorney General, et al., Respondents.

No. EP 06–CA–00242–KC.

United States District Court, W.D. Texas, El Paso Division.

June 22, 2006.

Edgar H. Holguin, Lead Attorney, Public Defenders Office, El Paso, TX, for Petitioner.

Jose J. Tarvárez, Lead Attorney, Special Assistant U.S. Attorney Immigration and Customs Enforcement, Magdalena G. Jara, Lead Attorney, Assistant U.S. Attorney, El Paso, TX, for Respondents.

## *ORDER*

CARDONE, District Judge.

On this day, the Court considered Nantu Khan's ("Petitioner") Petition for Writ of Habeas Corpus and Respondents' Motion to Dismiss ("Motion"). For the reasons set forth herein, Respondents' Motion is **DENIED** and Petitioner's Petition is **GRANTED**.

## I. BACKGROUND

Petitioner, Nantu Khan[1], entered the United States from Canada on or about May 1, 1997. Resp't's Mot. 1. On September 7, 2004, Petitioner was taken into custody by the Bureau of Immigration and Customs Enforcement ("ICE") in Albuquerque, New Mexico in possession of an expired Bangladeshi passport with a fraud-

---

1. Petitioner refers to himself as "Abdulle" on the first page of his "Response to Respondents' Motion to Dismiss" even though the Petitioner's name in the caption is Nantu Khan. The Court will substitute "Khan" for "Abdulle."

ulent United States permanent residence stamp. *Id.* He was detained at the El Paso Department of Homeland Security Service Process Center and released on September 15, 2004, having posted immigration bond. *Id.* at 1–2. On October 7, 2004, the Process Center discovered a discarded identification card and passport belonging to Petitioner hidden in a toilet. *Id.* at 2. On January 20, 2005, Petitioner was convicted of knowingly destroying, concealing, and mutilating identification documents in a federal investigation under 18 U.S.C. § 1519.[2] *Id.* Petitioner was ordered removed from the United States on December 19, 2005. *Id.* The order became final on that date as Petitioner waived appeal. *Id.* Petitioner has been in custody at the El Paso Service Processing Center since that time. Pet'r's Pet. 2.

On June 7, 2006, ICE reviewed Petitioner's continued detention and determined that he would remain in custody. Resp't's Mot. Ex. 1. According to ICE's "Decision to Continue Detention" ("Decision"), their decision was based upon (1) Petitioner's failure to demonstrate that he was not a flight risk and (2) the fact that Petitioner's removal was not practicable. *Id.* ICE also refused to grant Petitioner supervised release because he failed to provide information as to a proposed residence and failed to submit a release plan with U.S. probation. *Id.*

In May of 2006, Petitioner provided ICE with the names and addresses of his family in Bangladesh as well as additional personal information and a copy of his expired passport for use by the Bangladeshi consulate in securing travel documents for him. *Id.;* Pet'r's Resp. 3, Ex. 1. On June 2, 2006, ICE confirmed that the consulate attempted to contact Petitioner's mother but was unable to locate her. *Id.* at Ex. 3.

On July 13, 2006, ICE conducted a second custody review with Petitioner and determined that he should remain detained because the Bangladeshi consulate had not indicated that they would not be issuing a travel document. *Id.* at 2. On August 3, 2006, a consulate representative again interviewed Petitioner. *Id.* at 5; Resp't's Mot. 5. According to ICE, the consulate was unable to determine whether Petitioner was a citizen of Bangladesh and requested that Petitioner complete a new document request packet. Resp't's Mot. Ex. 2. The most recent contact between Respondents and the consulate was on September 12, 2006 when the consulate stated that they could not issue travel documents because Petitioner's background investigation was not complete. *Id.*

Respondents have attempted to secure travel documents from the Bangladeshi consulate for Petitioner on four separate occasions. Evid. Hr'g of Sept. 19, 2006 ("Hearing"). Petitioner has participated in these attempts by signing passport renewal forms, by providing copies of his expired passport, and by speaking with the consulate on three occasions. *Id.* Respondents have stated that there is nothing else that they or Petitioner can provide to the consulate. *Id.* Respondents also state that they have no further plans to contact the consulate. *Id.*

Petitioner has been detained for nine months, three months beyond the presumptively reasonable period allowed under the Supreme Court's ruling in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). Petitioner's stepsister, who lives in California, has agreed to house him and to provide financial sup-

---

**2.** Respondents incorrectly state in their Motion to Dismiss that Petitioner was convicted of violating 8 U.S.C. § 1519. Resp. Brief at

2. No such statute exists. Petitioner was in fact convicted of 18 U.S.C. § 1519.

port. Pet'r Resp. 6, Ex. 6; Resp't's Mot. Ex. 1.

On July 12, 2006, Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pet'r's Pet. 1. On July 14, this Court ordered Respondents to show cause. Respondents filed a motion to dismiss on August 7, 2006. Resp't's Mot. 1. Petitioner responded on August 17, 2006. Pet'r's Resp. 1.

## II. DISCUSSION

### A. Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true, and view them in a light most favorable to the plaintiff. *Id.; Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir.2002). A court will dismiss a complaint pursuant to Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *S. Christian Leadership Conference v. Supreme Court of Louisiana*, 252 F.3d 781, 786 (5th Cir.2001).

### B. Petitioner's *Zadvydas* Claim

After an IJ enters a final order of removal, the post-removal statute, codified at 8 U.S.C. § 1231, allows the Government to detain aliens pending actual removal. 8 U.S.C. § 1231(a); *Zadvydas v. Davis*, 533 U.S. at 682–83, 121 S.Ct. 2491; *Shokeh v. Thompson*, 369 F.3d 865, 869 (5th Cir. 2004). Generally, the Government must facilitate removal within a ninety (90) day removal period following entry of the final order of removal. 8 U.S.C. § 1231(a); *Abdulle v. Gonzales*, 422 F.Supp.2d 774, 777 (W.D.Tex.2006). An exception to this 90–day removal period exists, allowing the Government to detain the alien beyond the removal period, when "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *Abdulle*, 422 F.Supp.2d at 777. This exception exists because "[w]e cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 ... until the alien makes a full and honest effort to secure travel documents." *Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir.2003).

Assuming that an alien meets the good faith requirement imposed by § 1231, habeas courts must then examine the length of the alien's detention. When presented with the issue of whether aliens that the Government is unable to remove are condemned to face an indefinite term of detention in *Zadvydas v. Davis*, the Supreme Court held that " 'once removal is no longer reasonably foreseeable, continued detention is no longer authorized by 8 U.S.C. § 1231.' " *Shokeh*, 369 F.3d at 869 (citing *Zadvydas*, 533 U.S. at 699, 121 S.Ct. 2491). To aid habeas courts in determining what constitutes the reasonably foreseeable future, the Supreme Court held that six months from the final order of removal is a presumptively reasonable period of detention. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* For detention to remain reasonable, what counts as the "reasonably foreseeable future" must shrink as the period of detention increases. *Id.*

No court has addressed the quantum of evidence necessary to establish lack of cooperation under § 1231. *Abdel–Muhti v. Ashcroft*, 314 F.Supp.2d 418, 428 (M.D.Pa.

2004). Nonetheless, when faced with the issue of determining whether petitioners have satisfied their obligations under § 1231, courts look to whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the consulate of the country of intended removal, and/or whether they can or have provided the INS with requested documents. *Lema v. I.N.S.*, 341 F.3d at 857 (finding petitioner failed to cooperate because he provided no affidavits, made no requests for travel documents, did not contact the consulate, and failed to produce documents to INS); *Olajide v. B.I.C.E.*, 402 F.Supp.2d 688, 693 (E.D.Va.2005) (denying habeas relief when petitioner obstructed efforts at removal by refusing medical treatment); *Arjam v. Ashcroft*, 2006 WL 2241588, at *2–3, 2006 U.S. Dist. LEXIS 54229, at *7 (D.N.J. Aug. 4, 2006) (denying habeas relief when petitioner confused the issue of his identity and failed to ask nearby family members to assist him in establishing his identity); *Jabir v. Ashcroft*, 2004 WL 60318, at *8, 2004 U.S. Dist. LEXIS 346, at *31 (E.D.La. Jan. 8, 2004) (granting habeas relief when Government failed to produce evidence that receiving country would enable removal and that petitioner had obstructed attempts at removal). Courts are careful to note that the Government bears some burden for articulating the information required from petitioners and for focusing efforts on obtaining appropriate documentation to expedite removal. *Qing Di Wang v. Ashcroft*, 2006 WL 1540896, at *4, 2006 U.S. Dist. LEXIS 34920, at *13 (D.N.J. May 31, 2006).

█ Respondents argue that Petitioner should not be released because he is responsible for the need to obtain the documents, having destroyed his travel documents when the government first picked him up. Petitioner argues that he has, in fact, done everything within his power to assist Respondent in acquiring travel documents from the Bangladeshi consulate.

In the instant case, Petitioner has shown good faith. He has provided a copy of his expired passport to the government for use in securing travel documents. He has signed passport renewal forms and complied with the Bangladeshi consulate's requests for interviews on three separate occasions.

Moreover, Respondents' argument is without merit. First, the *Zadvydas* analytical framework and the relevant statute, 8 U.S.C. 1231(a)(1)(C), refer to an alien's efforts to secure his removal during the removal period. Thus, the relevant period for the Court to evaluate an alien's good faith begins on the date of the final order of removal. *See* 8 U.S.C. § 1231(a)(1)(C); *Abdulle*, 422 F.Supp.2d at 777. Petitioner destroyed his travel documents prior to receiving his final order of removal and thus Respondents' argument is misplaced. Secondly, according to Respondents' rationale, Petitioner would never be eligible to be released from detention because he will always have performed the acts of bad faith that the government describes. This is contrary to the Supreme Court's holding in *Zadvydas*. Finally, Petitioner was already punished separately for the destruction of his identification documents as evidenced by his time served in federal prison. Accordingly, this Court finds that Petitioner met the good faith requirement of § 1231.

██ Next, this Court will address the length of Petitioner's detention. As stated above, a reasonably presumptive period of detention pending removal is 6 months. *Zadvydas*, 533 U.S. at 701, 121 S.Ct. 2491. Thereafter, "once the alien provides good

reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

In this case, Petitioner has met his burden under *Zadvydas.* He has demonstrated that the Bangladeshi consulate is unlikely to provide him with the necessary travel documents any time soon. He has spoken with representatives of the consulate on multiple occasions and filled out several application packets for travel documents to no avail. In addition, Respondents have stated that there is nothing more that Petitioner can do to assist in his removal. Therefore, this Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

█ Under the *Zadvydas* framework, Respondents must rebut this showing. Respondents argue that because Petitioner has recently spoken with the Bangladeshi consulate for a second time, issuance of the travel documents must be imminent. Respondents contend that the consulate would not otherwise devote resources to Petitioner's case unless it were ready to issue documents.

This argument is speculative at best. There are many reasons why the consulate might wish to speak with Petitioner which do not indicate the imminent issuance of travel documents. For example, the consulate might require additional information in its ongoing investigation into Petitioner's citizenship. Accordingly Respondents have failed to meet their burden.

### III. CONCLUSION

Petitioner, Nantu Khan's petition for writ of habeas corpus (Doc. No. 1) is **GRANTED.** Petitioner is **ORDERED RELEASED** from physical custody.

**IT IS FURTHER ORDERED** that Respondents' Motion to Dismiss (Doc. No. 4) is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner, Nantu Khan, shall fully cooperate with the Bureau of Immigration and Customs Enforcement to effect his prompt removal from the United States.

**IT IS FINALLY ORDERED** that Petitioner shall be released under an order of supervision to be established by a deportation officer in the Bureau of Customs and Immigration Enforcement. An officer of the Bureau of Immigration and Customs Enforcement shall supervise Petitioner pending his removal in accordance with Title 8 U.S.C. § 1231(a)(3) and agency regulations, subject to such terms and conditions as it deems appropriate, pending the issuance of travel documents to effect his removal.

**SO ORDERED.**